EMILY B. TERRY and MARY B. PARKER, Respondents, *v.* THE
RECTOR, CHURCH WARDENS AND VESTRYMEN OF ST. STEPHEN'S
PROTESTANT EPISCOPAL CHURCH OF THE VILLAGE OF NEW
HARTFORD, NEW YORK, Appellant.

*Will — a gift of the residue of an estate to the testator's widow for life, " with the*
*right to use and dispose of so much of the principal of said residuary estate during*
*her lifetime as she shall see fit " — it does not authorize a transfer to take effect on*
*the widow's death — who is not a purchaser within the Statute on Powers — who*
*may sue to recover property improperly transferred by the widow.*

Morgan Butler, who died August 3, 1892, left him surviving his widow, two
sisters and two nieces.   His estate consisted of $18,000 in real property and
$65.000 in securities.   By his will he gave his executors $40,000 in trust to pay
the net annual income thereof to his wife during her life, and, at her death, he
gave the fund to twelve different legatees, two of whom were his two nieces.   His
two sisters were not mentioned among such legatees.   He then provided: "All
the rest, residue and remainder of my property and estate, real and personal, I
give, bequeath and devise to my said wife, Marianne H. Butler, for life, with
the right to use and dispose of so much of the principal of said residuary estate
during her lifetime as she shall see fit.   Upon the death of my said wife I give,
bequeath and devise all that shall then remain of my said residuary estate," to
three sisters, naming them, and the two nieces.   One of his sisters predeceased
him.

May 5, 1894, the accounts of the executors of Morgan Butler were judicially set-
tled, and, in pursuance of the decree rendered in such proceeding, the stock
passing under the residuary clause of the will was transferred to the testator's
widow.

May 31, 1897, Mrs. Butler assigned the stock to one of her employees, taking
from him an agreement that, at her death, he would assign the same to a
church corporation for the purpose of erecting a church.   Pursuant to an
understanding between the widow and her employee, the dividends declared
on the stock during the widow's lifetime were paid over to her.   After the
widow's death, which occurred September 8, 1901, such employee, in accord-
ance with the agreement, transferred the stock to the church corporation, which
paid no consideration therefor.   The stock was valued at about $14,000 which
constituted substantially the entire residuary personal estate.

In an action brought by the two nieces of the testator who had succeeded to the
interests of the other residuary remaindermen against the corporation to set
aside such transfer, it was

*Held,* that the power of disposition over the residuary estate given to the testa-
tor's widow was limited to what was, in her judgment, reasonably necessary
for her use and enjoyment during her life, and that she had no power to make

the transfer to the defendant which was, in effect, a testamentary disposition of the residuary estate;

That the transfer to the church corporation being, in substance, a gift, the church corporation was not a purchaser within the meaning of the Statute on Powers, even if that statute was applicable;

That the plaintiffs were entitled to attack the transfer.

APPEAL by the defendant, The Rector, Church Wardens and Vestrymen of St. Stephen's Protestant Episcopal Church of the Village of New Hartford, New York, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Oneida on the 12th day of September, 1902, upon the decision of the court, rendered after a trial at the Oneida Special Term, setting aside certain transfers of personal property.

This action was brought to set aside a transfer by the widow, the life beneficiary under the will of Morgan Butler, of certain stock constituting part of his estate. The plaintiffs are the two nieces of the testator, mentioned in the residuary clause of the will, who have succeeded to the interests of the other residuary legatees.

*Frank M. Loomis,* for the appellant.

*C. Lansing Jones,* for the respondents.

Judgment affirmed, with costs, upon opinion of MERWIN, J., delivered at Special Term.

ADAMS, P. J., SPRING, WILLIAMS and HISCOCK, JJ., concurred.

The following is the opinion of MERWIN, J., delivered at Special Term:

MERWIN, J.:

The controversy in this case involves the construction of the residuary clause in the will of Morgan Butler, who died on August 3, 1892, leaving him surviving his widow, Marianne H. Butler, but no descendants. His only heirs and next of kin were two sisters and two nieces, the latter being the plaintiffs in this action. He left real estate to the value of $18,000 and personal property, consisting of investment securities, of the value of about $65,000.

The will is dated May 28, 1891. The testator, after providing for debts and expenses, gave to his executors the sum of $40,000 in

trust to invest and pay the net annual income to his wife during her life, and at her death he gave the fund, in specified amounts, to twelve different legatees.   Of these, seven were benevolent or religious institutions, receiving in the aggregate the sum of $24,000. The other five were individuals, two of them being his two nieces and they receiving $5,000 each.   Then came the residuary clause :

" All the rest, residue and remainder of my property and estate, real and personal, I give, bequeath and devise to my said wife Marianne H. Butler for life, with the right to use and dispose of so much of the principal of said residuary estate during her lifetime as she shall see fit.   Upon the death of my said wife, I give, bequeath and devise all that shall then remain of my said residuary estate," to his three sisters, naming them, and the two nieces.   He appointed his wife and two others executors with full power to sell real estate. One of the sisters died before the testator.

On the 5th of May, 1894, there was a judicial settlement of the accounts of the executors, and in pursuance of the decree then entered the executors delivered into the custody of said Marianne H. Butler the securities in controversy here, being shares of stock in three corporations, and being a portion of the residuary estate, to be used and enjoyed by her as directed in the will.   These securities were in his lifetime the property of Mr. Butler and were represented by certificates of stock issued to him by the respective corporations. These certificates were surrendered by the executors to the corporations and new certificates issued by them to and in the name of Mrs. Butler.

On the 31st of May, 1897, Mrs. Butler assigned this stock to one Dewhurst, who was then in her employ, taking from him an agreement that at her death he would assign the same to the defendant, to be received by it for the purpose of the erection of a church. This transfer to Dewhurst was not for his individual benefit. During the lifetime of Mrs. Butler he received the dividends and paid them over to her.   It may be inferred that these were so paid in pursuance of an understanding to that effect between Dewhurst and Mrs. Butler at the time of the transfer to him.   After her death, which occurred on September 8, 1901, he transferred the stock to the defendant, in accordance with his agreement, and it now holds

the same. The defendant did not pay any valuable consideration for the transfer. This stock is of the value of about $14,000, and constituted substantially the entire residuary personal estate. Mrs. Butler received during her life the income of the trust fund, and also the rents and profits of the real estate, which consisted of the homestead and a farm.

The transfer to defendant was in substance a gift from Mrs. Butler taking effect at her death. Under the will she had no power to dispose of the property by will. The gift was testamentary in its character. Could she, by gift not taking effect till after her death, accomplish what by will directly she could not do?

The primary devise or bequest to the widow was only of a life estate. In this respect, the case is different from some of the cases cited. In *Campbell* v. *Beaumont* (91 N. Y. 464) the primary devise was, or was deemed to be, absolute, and the question was whether it was limited by subsequent expressions. It was held not. So in *Leggett* v. *Firth* (132 N. Y. 7) the primary devise to the widow was absolute, but there was a provision that on the decease of the widow "the remainder thereof, if any," should go to other parties. It was held (p. 12) that the widow took only a life estate with a power of sale to be exercised during her life for her own benefit. *Baumgras* v. *Baumgras* (5 Misc. Rep. 8) was an action of partition, and the question was whether the plaintiff had only a contingent remainder. That does not reach the question here.

In *Terry* v. *Wiggins* (47 N. Y. 512) there was a residuary devise to the wife "for her own personal and independent use and maintenance, with full power to sell or otherwise dispose of the same, in part or the whole, if she should require it or deem it expedient to do so." It was said (p. 516), "the power could only be exercised under the will in case the wife should require it or should deem it expedient; that is, with a view to her 'personal use and maintenance,' the purposes for which it was given."

In *Matter of Cager* (111 N. Y. 343) there was a gift to the wife of all the estate, real and personal, "to be used and enjoyed, and at her disposal during the term of her natural life." Any that might remain at her decease was given to other parties. It was held that the widow had power to dispose of the corpus of the estate, but that this power was not intended to be absolute and unconditional,

" but was limited by the language devising the property for her use and enjoyment during her life, and did not give her the power of disposing of it by will."

In *Wells* v. *Seeley* (47 Hun, 109) there was a residuary devise to the wife " to be held and used by her as she shall see fit and proper, during the full term of her life, and at her death, if any part of my said estate shall remain unexpended," then over to others.  It was held to be the intention to give to the wife the use of the property during her life, with the power to use such portion of the principal as should, in her opinion, be necessary for her support and to carry out the provisions of the will.

In *Greyston* v. *Clark* (41 Hun, 125) there was primarily an absolute gift to the wife, and for this reason it was held (p. 132) that the widow, during her life, could dispose of the property, although it was not for her support and maintenance.

In *Thomas* v. *Wolford* (49 Hun, 145) a bequest for life with remainder over of what might be left was held to give the widow the power, during her life, to consume or dispose of the *corpus* of the estate as might become expedient or necessary to secure for her its beneficial enjoyment.

The gift in the present case to the widow for life gave to her the beneficial enjoyment of the property during her life, and in connection with this she was given the right " to use and dispose of " so much of the principal during her lifetime as she should see fit.

The testator, in giving to his wife the income of the trust fund, and the residuary estate for life, gave to her the use during her life of all his property.  She was not given any claim upon the principal of the trust fund.  That was given over, largely, to benevolent objects, provision being also made for the two nieces.  The widow was given the right to resort to the principal of the residuary estate. The provisions for the widow were undoubtedly intended for her personal benefit during her life.  I fail to find in the will any evidence of any intention on the part of the testator to constitute the widow the almoner of his bounty or give her power to create a trust for that purpose.  His limitation of her power to her lifetime is indicative of a contrary intention.  He designed to fully provide for his wife, but he expected there would be a remainder at her death.  He used the words " all that shall then remain."  Of

the five remaindermen, three of them, his sisters, had not been previously remembered in the will.

The logic of the *Cager* case seems to me to be quite applicable here. There the gift was "to be used and enjoyed, and at her disposal" during life and still the power of disposition was said to be limited to the purpose of her use and enjoyment. A power to dispose of, as one shall see fit, is no stronger than a power of disposal generally. So in the *Wells* case the expression "as she shall see fit" seems to have been considered as only leaving it to the judgment of the devisee to determine the amount necessary to carry out the provisions of the will. In the *Leggett* case, although there was primarily an absolute devise in terms not limited in its object, still it was said that there was only a power of sale to be exercised by the devisee for her own benefit.

I am of the opinion that the power of disposition given to the widow in this case was limited to what was in her judgment reasonably necessary for her use and enjoyment during her life and that she had no power to make what were in effect testamentary dispositions.

The transfer to defendant being in substance a gift, it (defendant) is not, I think, a purchaser within the meaning of the Statute on Powers (1 R. S. 732, § 81; 4 id. [8th ed.] 2446, § 82) even if that statute is deemed to be applicable. (*Rose* v. *Hatch*, 55 Hun, 461.)

The plaintiffs are in a position to attack the transfer. (*Swarthout* v. *Ranier*, 143 N. Y. 499.)

The foregoing considerations lead to the conclusion that the transfers to defendant are not valid and the plaintiffs are entitled to recover the property.