### F. NOBLE GRIFFIN *vs.* CHARLES B. KITCHEN & others.

Essex.   November 10, 1916. — December 5, 1916.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Equity Jurisdiction,* To relieve from fraud.  *Contract,* What constitutes, Validity, Consideration.  *Devise and Legacy,* Life estate with power to use principal.

A will which gives all the testator's estate to his widow "during her natural life for her support, comfort and enjoyment or for any other purpose for which she may deem it necessary to use it" gives the widow an absolute and unlimited power to use the principal for any purpose which she in good faith thinks reasonable and proper to provide in a broad way for her support, comfort and enjoyment, and under such power, if she is afflicted with a loathsome disease the duration of which she does not know, she may make a contract with her sister whereby out of personal estate of the testator amounting to $6,042.90, she transfers to the sister $4,047.47 and the sister agrees to care for her for the rest of her life, if such contract is made in good faith and the widow thinks that such an agreement is reasonably necessary.

But the widow under such a will has no power to make gifts of $100 each to various persons out of the principal of the fund, and, if she does so, the residuary legatee under the will can compel their repayment.

BILL IN EQUITY, filed in the Superior Court on February 27, 1911, and afterwards amended, by the son of Benjamin W. Griffin, late of Rockport, who was the residuary legatee under his will, against Effie A. Davis, a sister of the testator's widow, who was the plaintiff's stepmother, and other persons who, the plaintiff alleged, fraudulently had procured that the testator's widow just before her death should transfer to them much of the personal estate of the testator which, with all the rest of his estate, by the terms of his will had been given to her "during her natural life for her support, comfort and enjoyment or for any other purpose for which she may deem it necessary to use it."

The suit was referred to a master. He found that the personal property of the testator amounted to $6,042.90; that the widow transferred $4,047.47 to her sister the defendant Davis, under the agreement described in the opinion, and $100 each to four other defendants as gifts. Other findings of the master material to the decision are reported in the opinion. A decree was ordered by *Hardy,* J., confirming the master's report and dismissing the bill. The plaintiff appealed.

*F. H. Tarr,* for the plaintiff.

*W. A. Pew,* for the defendants.

PIERCE, J. Clara M. Griffin under the will of her husband, Benjamin W. Griffin, was given a life estate for her support, comfort and enjoyment or for any other purpose for which she may deem it necessary to use it, with "full power during her life time, to sell in her sole and individual name, or dispose of in any way she may deem necessary, . . . any or all my said personal or real estate." *Hale* v. *Marsh,* 100 Mass. 468. *Welsh* v. *Woodbury,* 144 Mass. 542. *American Baptist Publication Society* v. *Lufkin,* 197 Mass. 221. All the property which should remain at the death of the wife was given to the plaintiff.

The finding of the master upon the facts found and testimony reported by him "that an agreement was made between Mrs. Griffin and Mrs. Davis that Mrs. Davis should care for Mrs. Griffin, and should receive in consideration therefor whatever remained of the property of Mr. Griffin given by him in the first item of his will and included in the inventory of his estate," is supported by the conversations of September, 1909, of July, 1910, and by the conduct of the parties. The finding "that said agree-

ment was deemed by Mrs. Griffin reasonably necessary, and was in fact a reasonable appropriation of said property for her support and comfort," is a reasonable conclusion from the facts found by the master that Mrs. Griffin was a woman of a sensitive nature, of refinement and intelligence; that she was afflicted with a loathsome, disagreeable and offensive disease; that she had a horror of hospitals; that she did not wish strangers to take care of her; that she appreciated the task which the nursing and care of her placed upon her sister; that not until June or July, 1910, were Mrs. Griffin and Mrs. Davis informed and not until then did they expect that the disease was likely to prove fatal; that after July, 1910, they might have known that at some time it would terminate fatally but whether within some months or after one or more years Mrs. Griffin did not then, nor till shortly before her death in 1911, know or appreciate; that, whether Mrs. Griffin lived a longer or shorter time, Mrs. Davis was to give her sister her personal care at her (Mrs. Davis's) house; that Mrs. Griffin was advised by her physician that she would not be able to continue housekeeping and that she had better go to her sister's; that in case she remained at her house two nurses would be necessary to care for her, at an expense of $21 per week each, not including board.

The findings that the contract was made in good faith, that Mrs. Griffin was of sufficient mental capacity to make the contract between Mrs. Davis and herself, that she understood the effect of the contract, and that there was no fraudulent intention on the part of Mrs. Davis, stand unimpeached by any facts of record and must be taken to be true in the absence of reported testimony. *Phelps* v. *Lowell Institution for Savings*, 214 Mass. 560. *Blodgett* v. *Ahern*, 217 Mass. 262. The master further ruled "that the transaction in question was not a colorable transaction made without adequate consideration, nor based upon no consideration from Mrs. Davis except a promise which both parties understood could not be fulfilled, and . . . that the transfer was not made so that the property in question might pass to the relatives of the life tenant rather than to the remainderman." These rulings are not erroneous in law and are conclusive as findings of fact.

"The plaintiff does not contend that if Mrs. Davis had been a

woman of some property to make her agreement of some substantial value, the alleged contract might not have been a reasonable contract; but under the circumstances of this case, it appears to the plaintiff too obvious for argument that the sole effect of the alleged agreement was not to benefit Mrs. Griffin in the slightest degree, but to give to the sister all the balance of the estate and to deprive the testator's son of the same. And the plaintiff claims that upon all the evidence in the case and the probabilities, the alleged contract was an afterthought on the part of Mrs. Davis, conceived by her after her sister's death, as her only reasonable excuse or pretext for retaining possession of the money." The contention of the plaintiff overlooks and rejects the fact that the thing most desired and most earnestly sought by Mrs. Griffin was the comfort she expected to derive from the care of a fond and ever thoughtful sister, who agreed and expected to take care of her as best she could even if the money became exhausted. We are of opinion that the contract was a reasonable one, founded upon reasonable judgment dealing with existing facts and reasonable anticipation of the future and having due regard for the purposes for which the power was given, and also for the rights of those whose interests are injuriously affected by its exercise. *Lovett* v. *Farnham,* 169 Mass. 1, 6.

We are of opinion that the will gave an absolute and unlimited power to use the principal for any purpose which Mrs. Griffin in good faith thought reasonable and proper to provide in a broad way for her support, comfort and enjoyment. *Dana* v. *Dana,* 185 Mass. 156.

But we do not think the gift of $100 to each of four other persons was a use to the support, comfort and enjoyment of Mrs. Griffin in the sense and meaning of the will. *Stocker* v. *Foster,* 178 Mass. 591.

The decree must be reversed and a decree entered in accordance with this opinion.

*So ordered.*