SARAH E. VINCENT, Plaintiff, *v.* WILLIAM H. RIX and Others, Defendants.

Supreme Court, Saratoga County, July 17, 1926.

**Wills — construction — decedent after giving remainder of real estate to his widow " to be her absolute property " directed that upon her death " whatever of property or estate she may have received from me " should go to decedent's heirs at law and next of kin — widow left will giving residue of her estate " from whatsoever source derived " to defendant — bequest to widow was not absolute — decedent intended to give widow life estate with remainder over of such part as she might not dispose of to his heirs at law and next of kin — partition — plaintiffs, as decedent's heirs at law, took property undisposed of at time of widow's death — plaintiffs entitled to judgment directing sale.**

A will by which a decedent after giving the remainder of his real and personal property to his widow " to be her absolute property " directed that upon her death " whatever of property or estate she may have received from me and which shall remain at that time undisposed of " should be given to said decedent's heirs at law and next of kin does not make an absolute gift of decedent's property to said widow, but clearly indicates that decedent intended to qualify and limit the gift to his wife to a life estate with the right to use as much of the principal as she chose, but with the limitation that the remainder go to his heirs at law and next of kin.

Accordingly, a bequest by the widow of said decedent to one of the defendants herein of " all the rest, residue and remainder of my real and personal property from whatsoever source derived " is without force and effect, since said widow did not obtain the fee to the property under her husband's will and no words which she might employ expressing her testamentary directions could create title in her to property of which she was not the owner; therefore, plaintiffs, who are decedent's heirs at law, are entitled to the usual interlocutory judgment directing a sale of the real estate which said widow received from her husband and which was not disposed of by her in her lifetime.

ACTION for the partition of certain real estate situate in the city of Saratoga Springs, N. Y. The facts are stipulated. The question of title to the premises is raised and the determination of that question depends on the construction to be given to the will of Asa W. S. Rix.

*Butler, Kilmer, Hoey & Butler* [*W. P. Butler* of counsel], for the plaintiff.

*Lewis C. Varney*, for the defendant Julia V. Putnam.

*William J. Delaney* as guardian *ad litem* of the defendant Violet Putnam.

HEFFERNAN, J. In November, 1919, Mr. Rix died, owning the real estate in question. He was survived by his widow, Julia, his sister, the plaintiff, and the defendants, William H. Rix, Isabella Whitehead, Louisa Lee, Caroline Shepherd and Arthur Shepherd, nephews and nieces, constituting his heirs at law and next of kin. He left a will relating to real and personal property which was admitted to probate in the Surrogate's Court of the county of Saratoga on the 10th day of January, 1920, and letters testamentary thereon were issued to his widow. By the terms of this will he made some general and specific legacies and disposed of his residuary estate by the 7th paragraph thereof in the following language: " All the rest, residue and remainder of my property and estate, both real and personal, and every name and nature, I give, devise and bequeath unto my beloved wife, Julia Rix, to be her absolute property, provided, however, that upon the death or remarriage of my said wife, whatever of property or estate she may have received from me and which shall remain at that time undisposed of, I give, devise and bequeath unto my heirs-at-law and next-of-kin, in shares as provided by the laws of descent and statutes of distribution of the State of New York."

The widow did not remarry. Upon the death of her husband she entered into possession of the real estate and continued to occupy it until the time of her death which occurred about December 14, 1925. She left a will which was probated in the Surrogate's Court of Saratoga county on December 28, 1925, and letters testamentary thereon were issued to the defendant Julia V. Putnam. By her will she made several general legacies and in paragraph 7th provided for the disposal of the residue as follows: " I give, devise and bequeath all the rest, residue and remainder of my real and personal property from whatsoever source derived to Violet Putnam, the daughter of my nephew, Fred C. Putnam, late deceased, to have and to hold forever."

The real estate which Mrs. Rix received from her husband was

not disposed of by her in her lifetime and upon her death it still stood in his name.

The contest here is between the heirs at law of Asa W. S. Rix, who claim the real estate under the 7th clause of his will, and Violet Putnam, the infant defendant, who contends that she is the owner of the property under the residuary clause of the will of Julia Rix. The heirs of Mr. Rix contend that they take the property under his will as property undisposed of at the time of his widow's death, while Violet Putnam insists that the title vests in her according to the will of Mrs. Rix on the theory that the latter had absolute title and that the limitation over was void, and on the further ground that the will of Mrs. Rix is an effective disposition of such property within the contemplation of her husband's will.

The will of Mrs. Rix makes no reference to any property received under her husband's will. The defendant stresses the words in that document *" from whatever source derived "* as expressing a contrary intent. It seems to me that this language does not avail the defendant. In the same paragraph and as part of the same sentence she refers to the rest, residue and remainder *" of my real and personal property."* If she did not obtain the fee to this property under her husband's will, but only a life estate, then no words which she might employ in expressing her testamentary directions could create title in her to property of which she was not the owner.

I am convinced that the 7th clause of Mr. Rix's will does not make an absolute gift of his property to his widow. This paragraph contains but a single sentence. If the words *" to be her absolute property "* were concluding words, no question could possibly have arisen as to the meaning and intention of the testator. The quoted words are followed by the significant expression, *" provided, however, that upon the death or remarriage of my said wife, whatever of property or estate she may have received from me and which shall remain at that time undisposed of, I give, devise and bequeath unto my heirs-at-law and next-of-kin, in shares as provided by the laws of descent and statutes of distribution of the State of New York."*

This language, it seems to me, clearly indicates that the testator intended to qualify and limit the gift to his wife to a life estate with the right to use as much of the principal as she chose, but with the limitation that the remainder go to his heirs at law and next of kin. The gift was not unrestricted. The thought, no doubt, in the testator's mind was to provide generously and unreservedly for his wife during her life time. The words used are broad and comprehensive and do not limit the character of the gift or the purposes for which it may be used. He gave to his wife the right to dispose of as much of his property as she thought proper but

41

anything that remained was to go to those of his own blood. It is apparent that the gift to the wife is specific. It is equally apparent that the gift over is just as clear and specific. The rights of creditors, purchasers or incumbrancers are not involved here and consequently the statutory provisions relating thereto have no application. The intention of the testator must be gathered not from any one clause but from the entire sentence. It is clear that he intended his wife to have something. It is equally clear that he also intended his heirs at law and next of kin to have what remained, if anything.

His will does not violate any canon of construction which defeats that purpose. He did not merely express a wish or a desire regarding the distribution of such part of the gift as was undisposed of at his wife's death. Taking the paragraph as a whole, I cannot escape the conclusion that the intention of the testator was to limit the gift to that of a life estate. This construction is in harmony with the views expressed in *Seaward* v. *Davis* (198 N. Y. 415) and *Matter of Ithaca Trust Co.* (220 id. 437).

In *Seaward* v. *Davis* (*supra*) one William Z. King died, leaving a last will by which he bequeathed his personal property as follows: " I give and bequeath all my personal property of every name and kind to my wife, excepting my piano, which I give to Lilly Corwin aforesaid. Whatever personal estate may remain at the decease of my wife, I give and bequeath to Briel Davis and Abagail Davis, the parents of my wife, or if they are not living, then to my sisters aforesaid and Lilly Corwin, share and share alike."

In commenting on this, Chief Judge CULLEN, who wrote for the court, said: " On the merits, we are of opinion that the will of William Z. King was properly construed by the Appellate Division on the first appeal in this case. (*Tuthill* v. *Davis*, 121 App. Div. 290.) That is to say, its effect was to give the widow a life estate with the absolute power of disposition during her lifetime, with remainder over of such part as she might not dispose of to the persons named in the will. (*Terry* v. *Wiggins*, 47 N. Y. 512; *Crozier* v. *Bray*, 120 id. 366; *Leggett* v. *Firth*, 132 id. 7.) "

The disputed clause in this will presents a stronger case for a like construction. In the *King* will the clause is divided into two separate sentences without any conditional word qualifying the first sentence. There, the first sentence ends with the words: " *I give to Lilly Corwin aforesaid.*" The second sentence begins with the words " *whatever personal estate may remain.*" The latter words are in no sense conditional or qualifying words, except that by interpretation they are construed to imply a possibility in the mind of the testator that some of the property so given in the

absolute terms of the first sentence might remain undisposed of. In the *Rix* will there is but one sentence expressing the one intention, namely, a gift of a life estate with remainder over. This seems clear not only because in the form of a single sentence but also because of the use of the words, " *provided, however,*" following the first part of the sentence. The word " *provided* " expresses a limitation or exception, followed by that which is expressed or understood. The word " *however* " is added confirmation of the same intention, showing clearly that the purpose is to qualify an apparently absolute gift. In *Matter of Ithaca Trust Co. (supra)* the clause of the will in question consisted of a codicil reading: " I hereby will and direct that the one-half ($\frac{1}{2}$) of my estate which in said will I gave to my mother, Harriet Simpson, shall be hers absolutely to use up, spend or give away, in any way she sees fit, but I will and direct, in the event there is any of the property hereby willed to her left and undisposed of by her at the time of her death, that sum or amount of property thus willed to her shall belong to my said wife, Mary A. Simpson, providing she shall be living at that time, and, as thus modified I hereby confirm my said will in all respects."

Here we have not only a direct gift as in the *Rix* case but also a characterization of it as absolute. In the *Rix* case it was said, " *to be her property absolutely,*" and in the *Ithaca Trust Co.* case the language used is, " *shall be hers absolutely,*" followed in the *Rix* case with the qualifying words, " *provided, however,*" and in the *Ithaca Trust Co.* case with the qualifying word " *but.*" The Court of Appeals, in holding that the mother took a life estate with remainder over to the testator's wife, in the opinion of Judge CHASE, said:

" We repeat that the testator did not intend that his mother should have an absolute title to the property bequeathed to her. That he did not have such intention appears from all that we have said, and because he clearly intended a remainder over to his wife after his mother's death. A remainder cannot be limited upon an *absolute* estate in fee. Where a gift is provided by will and such gift is intended to be *absolute,* a gift over is repugnant to such absolute gift and void and the purported gift over must be treated as a mere expression of a wish or desire regarding the distribution of such part of the gift as may remain undisposed of at the death of the donee. (*Moran* v. *Moran,* 143 Mich. 322; 5 L. R. A. [N. S.] 323, and note; *Campbell* v. *Beaumont,* 91 N. Y. 464; *Farmers Loan & Trust Co.* v. *Kip,* 192 N. Y. 266.)

" The testator gave to his mother power to dispose of the gift to her in her lifetime as in the codicil expressly provided, but the

gift is qualified by the words ' *but* I will and direct in the event there is any of the property hereby willed to her left and undisposed of by her at the time of her death that sum or amount of property thus willed to her *shall belong to my said wife*, Mary A. Simpson, providing she shall be living at that time and as *thus modified* I hereby confirm my said will in all respects.'

" The words ' undisposed of ' in the codicil, when considered in connection with the other language of the codicil and the general purpose of the testator must be held to relate to a disposition of the property so bequeathed to her to take effect prior to her death. The testator's intention to restrict the gift to his mother to a life estate with power of disposition in her life is not contrary to law. The rights of creditors, purchasers or incumbrancers are not involved, and the statutory provisions relating to such rights need not be considered.

" It is apparent that the testator intended to provide quite unreservedly for his mother in her lifetime, and it is also apparent that, subject to the provision for his mother during her lifetime, the testator desired to add to the provision for his wife any remainder of the gift to his mother that she did not actually use up, spend, give away or dispose of prior to her death.

" * * * The ordinary meaning of the words used in the codicil and the evident intention of the testator in their use lead to the conclusion that the testator intended by the codicil to change the absolute gift as provided by the original will in case his wife survived his mother to a life estate with power to use, spend or give away the principal in her lifetime but without power of disposition by will."

From the foregoing quotation it is apparent that the meaning of the words " *undisposed of* " is directly involved. The court said not only that the words " *undisposed of* " related to a power of disposal " *to take effect prior to her death*," but it specifically said that such power was " *without power of disposition by will*." The contention of counsel for Violet Putnam that the will of Julia Rix, which bequeathed her residuary estate, constituted a disposition of the property within the contemplation of the will of Asa W. S. Rix is thus answered. The disposition contemplated was specifically limited to the lifetime of Julia Rix.

The learned counsel for the defendant relies on *Matter of Gardner* (140 N. Y. 122) and *Tillman* v. *Ogren* (227 id. 495). In the *Gardner* case, by the residuary clause of his will, the testator gave the residue to his wife to have and to hold the same and every part and parcel thereof to her and her assigns forever; provided, however, that if any part of it should remain unexpended or

undisposed of at her death, what should so remain he gave to his son and his heirs and assigns, adding this clause: *" and I expect and desire that my said wife will not dispose of any of said estate by will in such a way that the whole that might remain at her death shall go out of my own family and blood relation."* Commenting on this paragraph, Judge MAYNARD, who wrote the opinion of the court, said: " He there explicitly recognizes her power to dispose by will of the estate given her, and indicates to her in part the course which he desires her testamentary disposition to take. He seeks to impress upon her the claims which his own family have upon her consideration, and the language is meaningless, unless it is to be assumed that he understood that by the terms of his will she had the power to devise or bequeath the estate which he had given her."

It is apparent from this quotation that the testator in that case understood that by the terms of his will his wife had the power to bequeath by will the property she received from him. In that case the will of the widow gave by specific description the property received from her husband. In the *Rix* case the widow made no attempt to exercise such a power. It is obvious that the courts regarded the *Gardner* case as turning on the use of precatory words. That view is confirmed by the language of Judge CHASE in *Tillman v. Ogren (supra)*, because he cites the *Gardner* case as authority for the rule that an apparently absolute gift cannot be cut down by the use of precatory words. Judge CHASE there said: " Where there is an absolute gift of real or personal property, in order to qualify it or cut it down the latter part of the will should show equally clear intention to do so by use of words definite in their meaning and by expressions which must be regarded as imperative. (*Clay* v. *Wood,* 153 N. Y. 134; *Matter of Gardner,* 140 N. Y. 122; *Roseboom* v. *Roseboom,* 81 N. Y. 356; *Post* v. *Moore,* 181 N. Y. 15.) "

In *Tillman* v. *Ogren (supra)* the will of Anna C. Erickson, in the 4th clause, contained this language: " I give and bequeath to my beloved husband Lars Erickson all of the rest and remainder of my estate both real and personal to have and to hold the same to him, his heirs and assigns forever, with the understanding that at the decease of the said Lars Erickson all of the estate which he shall derive under this will which shall then remain by him undisposed of he shall give and turn over to my sister Amanda Tillman."

In construing that will the court held that the husband took the fee and that the limitation over was void, and that the words used by the testatrix, instead of expressing a gift, merely imported a wish or a hope. There the court said: " The word ' understanding ' is one of common use but of varying meaning. (*Barkhausen* v.

*Chicago, M. & St. P. R. Co.,* 142 Wis. 292.) In *Camp* v. *Waring* (25 Conn. 520) the court say: ' The context here shows that the word " understanding," always a loose and ambiguous one, unless accompanied with some expression to show that it constituted a meeting of the minds of parties upon something respecting which they intended to be bound, was used, not to express anything which was the subject of an agreement or contract between the parties, but only that kind of expectation or confidence upon which parties are frequently willing to rely without requiring any binding stipulation.' "

The court thus calling attention to the word *" understanding "* which it characterizes as *" always a loose and ambiguous one "* and *" of varying meaning "* directs attention to the words which follow, which words do not purport to be a gift by the testatrix, but only an expression of her wish that her *" husband should give,"* thus emphasizing and making certain that the prior gift to the husband was absolute. In this connection the court said: " The statement by her in the latter part of said fourth paragraph of her will emphasizes and makes certain that the gift to her husband is absolute because she says that Lars Erickson ' *shall give and turn over to my sister Amanda Tillman* ' what shall remain by him undisposed of. The testatrix trusted her husband to respect her wish and desire in the disposition of any part of the rest and residue of her property not used by him in his lifetime."

This is the distinction between the *Seaward* and *Rix* cases on the one hand and the *Tillman* case on the other. In the *Seaward* and *Rix* cases there is an absolute gift with an equally clear and specific gift over, whereas, in the *Tillman* case, the gift over was held to be merely the expression of a wish and desire. The *Seaward* case is cited in the *Tillman* case for the rule that where the gift over is clear and definite it will be enforced. In discussing that subject it was there written: " A gift to one followed by a gift to another of such part thereof as may remain at the decease of the first taker, can be enforced when the intention of the giver is clear and definite to limit the gift to the first taker to a life estate with power to dispose of the principal or any part thereof during his lifetime and to give to another such part of the principal as is not disposed of in the lifetime of the first taker. (*Seaward* v. *Davis, supra.*) The gift over after a gift that is apparently absolute is sustained because it is ascertained that it was not the giver's intention to make an absolute gift, but one qualified and limited by the subsequent or other provisions of the will or instrument creating the gifts. (*Leggett* v. *Firth,* 132 N. Y. 7.) The common-law rule governing repugnant gifts has been changed by statute. (Real Property Law

[Cons. Laws, ch. 50], sec. 57; Personal Property Law [Cons. Laws, ch. 41], sec. 11.) "

For these reasons I hold that the real property sought to be partitioned belongs to the heirs at law of Asa W. S. Rix and that the plaintiff is entitled to the usual interlocutory judgment directing a sale.