SARAH E. VINCENT and Others, Pla`ntiffs, *v.* JULIA V. PUTNAM, as Executrix, etc., of JULIA RIX, Deceased, and Others, Defendants.

Supreme Court, Saratoga County, July 19, 1926.

Wills — construction — decedent after giving remainder of life estate to his widow " to be her absolute property " directed that upon her death " whatever of property or estate she may have received from me " should go to decedent's heirs at law and next of kin — widow's will gave residue of her estate " from whatsoever source derived " to defendant — bequest to widow was not absolute but merely life estate with remainder over to decedent's heirs at law and next of kin — real and personal property left by decedent and not disposed of by widow belongs to decedent's heirs at law and next of kin — merchandise purchased to replace stock sold became impressed with trust for remaindermen — gift of securities to defendant by widow invalid for lack of power.

A will by which the husband of defendant's testatrix gave the remainder of his real and personal property to his wife " to be her absolute property," but directed that upon her death " whatever of property or estate she may have received from me and which shall remain at that time undisposed of " should go to his heirs at law and next of kin, must be construed as giving said wife a life estate with the absolute power of disposition during her lifetime with remainder over of such part as she might not dispose of to said heirs at law and next of kin, and any real estate and personal property left by said husband and not disposed of by his widow in her lifetime, including a small portion of the original stock of decedent's store, together with the fixtures and certain securities found intact among his widow's papers after her death, now belong to his heirs at law and next of kin.

Title to new stock of merchandise purchased from time to time by decedent's widow for the business to replace the stock sold, said purchases being made with the proceeds of the sale, will be deemed to have been purchased with trust funds, and consequently it became impressed with a trust for the benefit of the remaindermen, particularly where the widow's trust relation to the estate of her husband never ceased; the sale of the old merchandise was not such a disposal of the property as was contemplated by the provisions of the will.

The widow had no power or authority to make a gift of certain securities to one of the defendants herein, since the will merely gave said widow a life estate for her own use. Therefore, the attempted gift of said securities to said defendant is invalid for lack of power, and all the personal property, together with the stock and fixtures, belongs to the plaintiffs, and a decree directing its delivery to the heirs at law and next of kin of the decedent is proper.

ACTION for an accounting and for the determination of the title to certain personal property. The action involves the construction

of the will of Asa W. S. Rix, and what personal property left by him remained undisposed of by his wife at the time of her death. The case is submitted upon an agreed statement of facts.

*Butler, Kilmer, Hoey & Butler* [*W. P. Butler* of counsel], for the plaintiffs.

*Lewis C. Varney,* for the defendants.

*William J. Delaney,* guardian *ad litem,* for Violet Putnam.

HEFFERNAN, J. On the 14th day of May, 1899, Asa W. S. Rix and Julia O'Brien were married in the city of Saratoga Springs. At the time of the marriage Mr. Rix was engaged in conducting a retail store for the sale of "Yankee Notions." Then, and for many years prior thereto, Mrs. Rix was a clerk in this store and she continued as clerk and manager after the marriage and until the death of her husband. She never received any salary for her services after marriage

In November, 1919, Mr. Rix died, leaving surviving his wife, and the plaintiffs in this action, who are his heirs at law and next of kin. He left a will which was probated in the Surrogate's Court of Saratoga county on the 10th day of January, 1920, in which he named his widow as executrix. She qualified as such and letters testamentary thereon were issued to her and she entered upon the performance of her duties and continued to so act until her death which occurred on the 14th of December, 1925. She took possession of the personal property of her husband as executrix of his will. She never accounted and was never discharged. By the provisions of his will Mr. Rix made some general and specific legacies and disposed of his residuary estate in these words: "All the rest, residue and remainder of my property and estate, both real and personal, and every name and nature, I give, devise and bequeath unto my beloved wife, Julia Rix, to be her absolute property, provided, however, that upon the death or remarriage of my said wife, whatever of property or estate she may have received from me and which shall remain at that time undisposed of, I give, devise and bequeath unto my heirs-at-law and next-of-kin, in shares as provided by the laws of descent and statutes of distribution of the State of New York."

At the time of his death the testator owned certain real estate, also certain personal property consisting of merchandise and store fixtures, and in addition thereto certain other securities numbered consecutively from 1 to 29, inclusive, and described in Schedule C attached to the complaint. Subsequently to her appointment as such executrix, the widow made an inventory of the husband's estate. She continued the business formerly conducted by her

husband and for that purpose used the stock of merchandise left by her husband and described in the inventory, and substituted new stock in place of the old with the proceeds of that sold. The business was continued by her under the name and style of " *Asa W. S. Rix Estate*." She reported the business during her life for Federal and State income taxes as the estate business and claimed and obtained a deduction therefor separate from and in addition to the deduction in respect to her personal income from her separate property which she separately reported. As executrix she paid the store bill owing at the time of her husband's death. She never changed the sign over the door. After the first year following her husband's death she gave a check for new stock in her own name. Upon the advice of her attorney she reported her income tax personally and as executrix of the estate of her husband for the sole purpose of obtaining an extra allowance for exemption. She never filed the certificate required by law to entitle her to conduct the business under the name of the estate or under any assumed name.

The securities numbered 11 to 19, inclusive, and 21 to 29, inclusive, in Schedule C, were found among the papers of Mrs. Rix after her death. A certificate, No. 46, for 100 shares of Colorado and Southern Railway Company, first preferred stock, and listed as No. 20 in Schedule C, was left by Mr. Rix, was registered in his name and was never transferred, but was continued by his executrix in his name to the time of her death and the dividends thereon were paid to and received and receipted for by her as such executrix. This certificate was also found among her papers. With regard to securities numbered 1 to 10, inclusive, in the schedule referred to, consisting of Liberty bonds and five stock certificates, the same were administered by the executrix as the property of her husband's estate. The certificates of stock were registered in his name until the 13th of November, 1925, and were never transferred prior to that date, and the interest and dividends thereon were paid to and received and receipted for by the widow as executrix. The income therefrom was, during her life, reported by her for Federal and State income tax purposes as the property of her husband's estate separate from and in addition to the deduction in respect to her personal income and her separate property.

It is claimed by the defense that Mrs. Rix, in her lifetime, made a valid and completed gift of the securities 1 to 10, inclusive, in Schedule C, to the defendant Violet Putnam. The facts in connection with that are that on November 13, 1925, Mr. Lewis C. Varney, who had been the attorney of the Asa W. S. Rix Estate since November 26, 1919, and who acted as the attorney for Julia Rix up to the time of her death, received a telephone call from the

latter requesting that he come to her apartment. He did so, and she talked with him about her business affairs generally and also gave directions for the preparation of her will, which she then executed. She advised Mr. Varney that she wished to give the stock certificates and the Liberty bonds in question to Violet Putnam. She handed these securities to her attorney and said: "*Give those to Violet Putnam.*" Mr. Varney explained to her that it would be necessary to sign the stock certificates on the back before a transfer could be made. She immediately attended to that formality. No stamps were affixed to the certificates. Mr. Varney took the stock certificates and Liberty bonds to his office and put them in the safe. The following day he talked with the defendant Julia V. Putnam, Violet's mother, and acquainted her with the gift and inquired as to what he should do with the securities. She directed him to keep the Liberty bonds in his custody for safety and attend to the transfer of the stock or to sell such stock as he thought best. The certificates and Liberty bonds were in his safe until the following Monday, on which day he had occasion to see Mrs. Rix on other matters. At that time he told his client that he intended to put the Liberty bonds and stock certificates which she had theretofore given to him for Violet Putnam in her safe deposit box for safekeeping until he could decide which stock to sell. She authorized him to do this. During all this time Mr. Varney had the key to her safe deposit box. Upon returning to his office he took the certificates and Liberty bonds and placed them in Mrs. Rix's safe deposit box in the bank. He retained possession of the key for a few days and then, Mrs. Rix being ill, he delivered it to Julia Putnam, the executrix named in her will. After Mrs. Rix's death these certificates were found intact in the safe deposit box in the same condition as when placed there by Mr. Varney. No consideration was paid for the alleged gift. No tax was paid upon any of the alleged transfers and no stamp was affixed to any of the certificates.

The widow did not remarry. She left a will dated November 13, 1925, and probated in the Surrogate's Court of Saratoga county on December 28, 1925, in which the defendant Julia V. Putnam was named as executrix and by the terms of which, Violet Putnam, an infant, unrelated to the husband, a daughter of a deceased nephew of the testatrix and her only living relative, was made the residuary legatee.

The controversy here arises over the construction of the 7th clause of Mr. Rix's will. For clarity and convenience, the property which he left may be divided into four classes, namely;

1. Certain real estate which is not involved here, but is the

subject of a partition action. The same question involved here as to the construction of the will of Asa W. S. Rix is involved in the partition action. In this action further questions are involved as to certain alleged dispositions of the personal property claimed to have been made by Mrs. Rix.

2. A stock of merchandise and fixtures. Mrs. Rix continued the business formerly conducted by her husband with this stock, substituting new stock in place of the old with the proceeds of that sold. This left two classes of stock upon the death of Mrs. Rix.

(a) A small portion of the original Asa W. S. Rix stock which had not been disposed of at the time of her death, and the fixtures.

(b) The new stock substituted in place of the old, with the proceeds of that sold.

3. The securities numbered 11 to 29, inclusive, in Schedule C, left by Mr. Rix, and remaining upon the death of Mrs. Rix concededly undisposed of.

4. The securities numbered 1 to 10, inclusive, in Schedule C, which it is claimed Mrs. Rix gave to Violet Putnam.

The first question involves the construction of the 7th clause of the will of Asa W. S. Rix. The meaning of that clause has already been considered and determined in the partition suit (*Vincent v. Rix*, 127 Misc. 639) where it was held that the effect of the will was to give the widow a life estate with an absolute power of disposition during her lifetime with remainder over of such part as she might not dispose of, to the persons named in that instrument. The reasoning in that case as to the disposition of the real estate applies with equal force to the personal property. The defendants make the same contention here which they made in the partition action and that is, that Julia Rix took an absolute estate in her husband's property; that the limitation over was void for repugnancy and that in any event the power of disposal included the power to will the property, which she did, to the defendant Violet Putnam.

As to the real estate and personal property left by Asa W. S. Rix and not disposed of by his widow in her lifetime, including a small portion of the original Asa W. S. Rix stock, the fixtures, and the securities numbered 11 to 29, inclusive, found intact among her papers after her death, there can be no doubt that the widow took but a life estate therein and that those items of property now belong to his heirs and next of kin. (*Seaward v. Davis*, 198 N. Y. 415; *Matter of Ithaca Trust Co.*, 220 id. 437; *Matter of Cager*, 111 id. 343; *Matter of French*, 52 Hun, 303.)

As to the title to the new stock of merchandise, it is clear that the widow conducted the business as executrix. Her trust relation to the estate of her husband never ceased. Apparently from her

own actions, she continued, from the time of her appointment as executrix, to act as trustee with regard to this business and stock down to the time of her death. From time to time she purchased new stock in place of the old with the proceeds of that sold. Under those circumstances, it seems clear that the substituted stock was purchased with trust funds and consequently it became impressed with a trust for the benefit of the remaindermen. This is not a disposal of property within the power conferred by the will. The proceeds stand in place of the original property as undisposed of. (*Matter of Blauvelt,* 131 N. Y. 249; *Kent* v. *Fisk,* 151 App. Div. 279; *Stafford* v. *Washburn,* 145 id. 784; revd., on dissenting opinion, 208 N. Y. 536.)

The only remaining question relates to securities numbered 1 to 10 which, it is claimed, Mrs. Rix gave to Violet Putnam. A difficult question arises in connection with the life estate given to Mrs. Rix. That estate is accompanied by an implied power of disposition. What is the extent of that power and for what purposes may it be exercised? Does the power of disposal given to the life tenant empower her to give the property away in her lifetime without consideration, and without any use or benefit to herself? Counsel have called my attention to no parallel case in this State decisive of this question. I have been unable to find any. What did Asa W. S. Rix mean by the use of the words " *whatever property or estate she may have received from me and which shall remain at that time undisposed of ?* " His intention must be gathered from the four corners of the will. The doctrine is elementary that it is the duty of the courts in construing wills to ascertain and declare the intention of the testator, that is, actual, personal and individual intention, not a mere presumptive intention. A will should be construed liberally so as to effectuate the intention. The court should take into consideration the situation of the testator and the facts and circumstances surrounding him at the time of execution, the condition of his family, the amount and character of his property. There are no arbitrary rules in the construction of the language employed. Substance rather than form must be regarded. The whole scheme of the will should be kept in mind and each part construed so as to form one consistent whole. The rules of construction adopted and adhered to are invoked as aids to the cardinal principle of determining the intentions of the testator.

In the case at bar a life estate only is devised and the life tenant given the power of disposal with a limitation over of such property as is undisposed of There is no express power of disposition in the will, but such a power is necessarily implied from the language used. Here, the testator evidently contemplated a diminution of

the corpus, but provided no method for its diminution except enjoyment of it by the life tenant. A devise over of that portion *" undisposed of "* by the life tenant of necessity means so much of the property so bequeathed remaining at the time of death. That the power of disposition in this case is not unlimited is plain. There would be no reason for making a devise over of the property undisposed of at the time of death of the life tenant if she had unlimited power of disposing of it at such time and on such occasions as she should choose. Neither would there exist any reason for the testator giving his wife a life estate at all. If he intended an absolute estate, evidently he would have said so instead of the words he used to describe the interest which the wife was to take. The husband and wife were childless and it is obvious that it was his desire to create for his wife the estate which he thought would be most beneficial to her. He evidently contemplated and intended that the uses which the wife would make of the property would not consume it all during her lifetime. Otherwise, there was no occasion for the devise over of the remainder. Did he intend that she could deprive his heirs at law and next of kin of all his property without benefit to herself? In other words, does the instrument clothe her with authority to dispose of the estate or any substantial part of it by gift? If so, then she could thereby defeat the intention of the testator. He denied her the power to dispose of his property by will. He did not intend to make her the almoner of his estate. He did not intend to give her authority to dispose of what he had accumulated by will to her nominees. In construing a will the rule is that where it is capable of two interpretations that one should be adopted which prefers those of the blood of the testator to strangers. (*Matter of Werlich,* 230 N. Y. 516; *Wood* v. *Mitcham,* 92 id. 375; *Matter of Edie,* 117 App. Div. 310.) In cases where the grant of a life estate is coupled with expressions giving broad powers of disposition, the rule is that the life tenant is given an absolute and unlimited power of disposition and may dispose of the property as he pleases so long as he acts in good faith and does not waste or squander the property for the purpose of preventing the balance of the estate from going to the remaindermen. The amount which a life tenant may use for his support and maintenance rests entirely in his honest judgment and discretion which cannot be controlled or limited by the courts in the absence of bad faith or fraud. The estate, however, cannot be wasted or squandered in extravagant or profligate living. (*Walsh* v. *Backus,* 183 Mich. 527; *Allen* v. *Hunt,* 213 Mass. 276; *Cross* v. *Hendry,* 39 Ind. App. 246; *Johnson* v. *Johnson,* 51 Ohio St. 446; *McClelland's Exr.* v. *McClelland,* 132 Ky. 284; *Pierce* v. *Stid-*

*worthy*, 79 Maine, 234; *Mills* v. *Bailey*, 88 Md. 320; *Barr* v. *Gardner*, 259 Ill. 256; *Tilton* v. *Tilton*, 70 N. H. 325; *Hasbrouck* v. *Knoblauch*, 130 App. Div. 378.) It seems to me that the will here necessarily implies a consciousness on the part of the testator that he had only given a life estate and the words used must be held to mean that the wife was endowed with plenary power to use as much of the principal or income as might be necessary for her personal comfort, enjoyment and happiness. The language of the will clearly implies a limitation or restriction of the wife's power of disposal. Where a will gives a life estate for the use and benefit of the life tenant with a power of sale or disposition, and an express remainder over of what is " *undisposed of*," or some equivalent phrase, while the life tenant is entitled thereunder to the possession and control of the property during his life with power to dispose of the whole or any part of the principal thereof as his necessities may require or his judgment dictate, he cannot dispose of it by gift *inter vivos*. The implied restrictions in this case are that the power shall be exercised by the wife during her lifetime for her own use and that it shall be exercised by her in good faith and not for the purpose of defrauding the remaindermen. I am convinced that the wife had no power or authority to make a gift of property which came to her by this will. There is abundant precedent in other jurisdictions sustaining this view.

In *Trustees Presbyterian Church* v. *Mize* (181 Ky. 567) Mrs. Mize devised to her husband the residue of her property in the following language: " The remainder of my property both real and personal of every kind and description, I give and bequeath to my beloved husband, C. C. Mize, to have and to enjoy same during his natural life, and at his death should there be anything left, it is my wish that it shall go to the Presbyterian Church of the city of Somerset, same to be used as the church may direct."

The court, in construing this, held that the husband took a life estate in the property and was entitled to its income; that his life estate was coupled with the power of disposition of it, or such part as might be reasonably necessary to provide him a comfortable maintenance during his natural life and that the church had a vested right to whatever portion of the estate may remain undisposed of at his death. In the course of the opinion there the court said: " If anything remained above what was necessary to be consumed for his reasonable support during his life, she intended that the church should receive it as the devisee, in remainder. He cannot waste the estate nor give it away, nor dispose of it, except for his own necessary use. That is the meaning of the implied power of disposal. He has a right to the entire income

from the property, and may encroach upon the principal, if such an encroachment is necessary to a reasonable and comfortable support for himself.   He is authorized to make a sale of the property, or of such part of it as may be necessary for the attainment of the above results."

In *Bevans* v. *Murray* (251 Ill. 603) the will under consideration gave all the estate of the testatrix to her husband, " to be by him used and disposed of during his natural life precisely the same as I might do were I living, hereby giving to my said husband full power to sell, exchange, mortgage, invest and reinvest the same in the same manner as I might do if living, and to use so much of the income and principal thereof as he may desire," with remainder over of any of the estate undisposed of by the husband at the time of his decease.   It was held that the authority to use so much of the income and principal as he might desire vested in the husband a large discretionary power as to the purposes for which he could use the proceeds of any sale of real estate.  Under this authority, the court held he had the right, in addition to providing for his necessary support and maintenance, to provide means for his own pleasure and enjoyment, and, if he saw fit, to employ someone to relieve him of the management of the estate so devised.   But the court held that the provisions were clearly made for his own personal benefit and advantage, and did not authorize him to give away any part of the property or change the residuary legatees, and hence held invalid a deed which purported so to do.   The court, however, upheld the validity of a deed whereby the husband conveyed an undivided one-third interest to another in consideration of services to be rendered, money advanced to the husband by, and debts assumed by the grantee.

In *Goodrich* v. *Henderson* (221 Mass. 234) it appeared that a testatrix provided for the payment, from the income of the balance of her estate, of $25 a month to her two aunts jointly, during their natural lives, or to the survivor of them, and then gave the residue of her estate to her husband, for his life, empowering him to use the principal of the estate for any purpose which he might deem expedient.   On his death, so much as might remain of the residue was to be divided equally among the testatrix's children.   It was held that the husband was entitled under the will to the income of the residue of the property during his life, with a power of spending and consuming the principal, subject to the charge, amounting to $300 a year, in favor of the two aunts of the testatrix, until the death of the survivor of them. Until the death of both aunts, it was held, the husband could not exercise his power of spending and consuming the principal so that

the remaining principal would not produce $300 a year; but subject to that, he had the right during his lifetime to spend and consume the principal for any purpose which he in good faith might deem expedient.

Under a will giving a life interest, with a power of disposition of part or all of the property for the particular purpose of the support and maintenance of the life tenant, with a gift over, to others, subject to the exercise of that power, and the application of the principal to that purpose, the life tenant cannot dispose of the property by gift *inter vivos.* (*Baldwin* v. *Morford*, 117 Iowa, 72.) In that case by the language of the will under consideration, the testator's widow was authorized " to have and to hold, enjoy and use, during her natural life, with full power to sell and convey for the purpose of paying said debts, and for her own support, comfort, and maintenance, without let or hindrance from anyone whatever, and in her own discretion," the testator's property. It was held that this power to dispose of the property did not include authority to the widow to dispose of the estate in whole or in part by gift, and that the purchase by her of a certain lot in the name of another was, in effect, a gift to him of the purchase price, and void.

In *Richards* v. *Morrison* (101 Maine, 424) it appeared that a will gave the residue of the testator's estate in trust, and directed the trustees " pending the settlement of my [his] estate and until final division," to pay to his wife ten twenty-sevenths portion of the income " during her lifetime, or until final settlement of my [his] estate," for her sole use and benefit, and after disposing of the balance of income to other parties he provided that " upon final settlement of my estate or distribution thereof, my trustees shall convey and deliver to my wife ten twenty-sevenths parts of this my residuary estate, and she may herself select such portion from any parcels of my residuary estate at the appraised value thereof. It is my will that my wife have the entire use and income, during her lifetime, of all said portion of my residuary estate; and in addition thereto, I do authorize and empower her to sell and convey by her own grant or deed any of said estate, real or personal, which she may in the exercise of her own discretion, elect to sell and convey for her sole use and benefit, without license of probate court." Then followed a gift over to other parties of what " at her death shall remain unused, unexpended or unsold and unconveyed by her." The court held that the widow was given a life estate with a power of sale for a limited purpose to wit, " for her sole use and benefit," of any of the property but that she was not authorized to bestow it by gift.

In *Griffin* v. *Kitchen* (225 Mass. 331) it appeared that the will of a husband gave his wife a life estate for her support, comfort and enjoyment, or for any other purpose for which she might deem it necessary to use it, with " full power during her lifetime, to sell in her sole and individual name, or dispose of in any way she may deem necessary, * * * any or all my said personal or real estate." It was held that while the will gave an absolute and unlimited power to use the principal for any purpose which the wife in good faith thought reasonable and proper to provide in a broad way for her support, comfort and enjoyment, a gift of $100 to each of four persons was not a use to the support, comfort and enjoyment of the wife in the sense and meaning of the will.

In *Stocker* v. *Foster* (178 Mass. 591) it appeared that a testatrix devised all of her estate to her husband during his natural life, with full power and authority to sell and dispose of any or every portion thereof whenever, in his judgment, he might deem it conducive to his comfort. The court held that the life tenant was authorized to sell the estate for a valuable consideration only, and only when he, in good faith, deemed such sale or disposal to be conducive to his comfort by enabling him, by means of such consideration, to supply his present or prospective need; and that the words " sell and dispose " meant a disposition by sale, and not by gift. · The court said: " All along, the language used by the testatrix seems clearly to refer to such comfort as can be attained by the application of the proceeds of the property to the reasonable needs of the life of the donee of the power, and not to that peace of mind which arises from a knowledge that the property has been so disposed of as to contribute to the enjoyment and support of others. The comfort experienced by the philanthropist in giving away his property, whether to relatives, friends or strangers, does not seem to us to be the kind of comfort which the testatrix had in mind when she was engaged in making this will." Hence, the court held that a transaction between the husband and another which the lower court characterized as " a colorable transaction, made without consideration, and carried out for the purpose of transferring the property in question so that it might descend to his children regardless of the will," was not a valid execution of the power.

In *Farlin* v. *Sanborn* (161 Mich. 615) it appeared that the material portions of a will devised all the testator's estate to his wife, for and during her natural life, with full power and authority to use and dispose of the same for her use, support and comfort, as to her should seem best, giving her full power to sell and convey all or any of the real estate, at her option, as fully as he himself would

do, with a devise of all the property that might be remaining on her decease to his heirs. It was held that the will created a life estate in the widow, and that thereunder she had the right to use the property and to dispose of and convey it for a specific purpose, to wit, for her use, support and comfort only, and that this did not give her a right to give away the property by gift *inter vivos.*

In *Gibson* v. *Gibson* (239 Mo. 490) it appeared that a will contained the following clause: " I will and bequeath to my wife Sarah Jane Gibson all of my property, real, personal and mixed, wherever the same may be situated, with the power to sell, control, manage and dispose of in the same way that I might do if living; but it is my wish and desire, and I so will that at her death, by will, or before if she so elect, that she shall divide among or settle upon my children and my grandchild the said property devised and bequeathed to her, and increase or proceeds of the same, in the following manner." The court held that the widow took, under the will, a life estate by clear implication, with full power of disposal for value, but that she had no power to give away the property or any part of it, except that she might, if she so chose, divide the whole property among the children and grandchild, as provided in the will, before her death. The court further held that she had the right to consume such parts of the principal as might be reasonably necessary for her support in accordance with her station in life. To the same effect are *Gardner* v. *Whitford* (23 R. I. 396); *Park's Admr.* v. *American Home Missionary Society* (62 Vt. 19); *Murray* v. *Kluck* (87 Wis. 566); *Hardy* v. *Mayhew* (158 Cal. 95); *Adams* v. *Prather* (176 id. 33; 167 Pac. 534); *Brookover* v. *Branyan* (185 Ind. 1); *Anderson* v. *Hall* (80 Ky. 91); *Davison* v. *Safe Deposit & T. Co.* (103 Md. 479); *Lehnard* v. *Specht* (180 Ill. 208); *Trigg* v. *Trigg* ([Mo.] 192 S. W. 1011). (See, also, *Wortman* v. *Robinson,* 44 Hun, 357; *Matter of Briggs,* 101 Misc. 191; mod. and affd., 180 App. Div. 752; 223 N. Y. 677; *Peck* v. *Smith,* 183 App. Div. 336; revd., on other grounds, 227 N. Y. 228; *Terry* v. *Rector, etc., St. Stephen's Church,* 79 App. Div. 527.)

From what has been said I am satisfied that Mrs. Rix was without authority to make a gift of these securities to Violet Putnam; that the attempted gift is invalid for lack of power; and that all the personal property in Schedule C, together with the stock and fixtures, belongs to the plaintiffs and that they are entitled to a decree directing its delivery to them.

In view of the conclusion which I have reached it is unnecessary to discuss the question as to whether there was a completed gift. Want of power in the giver renders the gift void.

Judgment is hereby directed accordingly.