BLACK et al. v. PETTIGREW et al.—270
S. W. (2d) 196.

Western Division at Jackson. September 17, 1953.

(1)

4

David P. Murray, J. L. Harrington, Carmack Murchison and Hughie Ragan, all of Jackson, for appellants.

E. J. Harris, and H. T. McCaslin, of Bolivar, Holmes & Holmes, of Trenton, Waldrop, Hall & Winningham, of Jackson, for appellees.

Woodson J. Savage, Jr., of Bolivar, guardian ad litem.

SWEPSTON, J.   The original bill was filed by Mrs. G. A. Black as executrix of the will of her husband and individually and by next friend, Mrs. W. O. Stone, who with her five daughters sue individually; all complainants are legatees and devisees under said will. Mrs. Black died shortly after the bill was filed and revivor has been had.

It is filed against several defendants for relief against alleged improper and void transactions had separately or jointly with Mrs. Black either as executrix or individually whereby it is alleged the rights of complainants have been infringed.

The Chancellor heard the suit on depositions, granted some of the relief sought and denied other and all parties have sought to appeal.

The original bill is lengthy, composing thirty-four pages of the transcript exclusive of exhibits and fifty-two pages with exhibits. The assignments of error are numerous, thirty by complainants, twelve by one defendant and several by other defendants. It will, therefore not be possible to detail the pleadings nor the various assignments of error within the compass of an opinion requisite for proper disposition of the case.

The substance of the bill is as follows. G. A. Black died testate June 18, 1938 the owner of certain real,

personal and mixed assets. The pertinent provisions of his will are:

## "Third

"I hereby give, bequeath and devise all of my property personal, mixed and real, to my beloved wife, Rebecca Priscilla Black, for and during her natural lifetime, to have and to enjoy in any way she may deem proper, also she may sell or dispose of any or all of my realty as she may desire.

## "Fourth

"After the death of my beloved wife, Rebecca Priscilla Black, it is my will and I hereby bequeath, give and devise all of my personal, mixed and real property, which may remain to be divided, as follows:

## "First

"That One Hundred Dollars ($100.00) be paid to each of the following persons viz.: Mr. J. H. Black, Mr. A. E. Black, Mr. M. L. Black and Mr. C. B. Black, and Fifty Dollars ($50.00) to Mrs. Catherine Baker, Mrs. Nora J. Cook, Mrs. Maggie Black Becker, and Mrs. Ophelia Black Seddens, being my brothers and sisters.

## "Second

"That the remainder of my property, personal, mixed and real to be divided and paid as follows, one-half to Mrs. Susie Black Stone, wife of Rev. W. O. Stone, my foster daughter and the remainder be equally divided and paid to each of my foster daughter's children, they being my foster grandchildren."

He was survived by his widow and by the named foster daughter and granddaughters and several blood relatives but neither he nor Mrs. Black ever had natural children.

Mrs. Black qualified as executrix but it is alleged that she was so enfeebled from age and disease and of so

limited an education as to be a person of unsound mind, wholly incapable of understanding or transacting any business; that Homer W. Black, a nephew of her husband insinuated himself into her confidence and complete management of her affairs, secured powers of attorney from her to himself and from time to time converted to his own use and his wife's most of the choses in action of the Estate and particularly obtained from her a deed of a gift to himself and his brother, Roy W. Black, of a brick business building in the town of Bolivar, which was the most valuable property of the estate; that shortly thereafter Homer conveyed his half interest in same to Roy who now owns the whole; that Roy then mortgaged the same to Louise Jones McAnulty for a loan of $10,000 when she knew of the confidential relationship between Homer and Mrs. Black, of her lack of mental capacity and of the provisions of the will, that Homer caused Mrs. Black to enter into other transactions whereby she disposed of other property by gift or by sale for an inadequate consideration; one of these was a release of a note for $2,500 owing by Roy and his wife and secured by a mortgage on their home.

An accounting is sought by Homer's administrator, he having died before the filing of the bill. Roy Black and his wife and Homer's widow and Mrs. McAnulty are all made defendants.

The bill sets out three separate sales of real property made by Mrs. Black to Jasper Maroney, M. R. Kelley and H. F. Wiggins respectively and each is sought to be held void on various grounds such as her alleged lack of capacity, inadequate or no consideration and lack of authority in the will of G. A. Black.

It is further alleged that Mrs. Black made a deed of

gift to certain real estate to her brothers, George and J. N. Pirtle which is void for several reasons.

It is alleged with reference to all sales of property in addition to other reasons that the sale was void because not necessary for her support nor advantageous to the Estate.

Three banks and the cashier of one of them are sought to be held accountable for choses in action alleged to have been wrongfully paid or delivered to Homer Black and others.

It is alleged that Homer and Roy Black were guilty of fraud in certain transactions with Mrs. Black.

Homer Black died before the filing of the suit and his administrator was made a defendant.

All defendants have answered denying the material averments of the bill as alleged against them severally or as to some jointly and severally.

The Chancellor found that, although Mrs. G. A. Black was more than seventy years of age at the time of her husband's death in 1938, was not physically strong, was of limited education and no doubt had some peculiarities or eccentricities, yet he was not satisfied she was not able to take care of herself in a business way, except during the few months just prior to her death at age eighty-four; that most of the transactions complained of were made within a reasonably short time after the death of her husband and several years prior to her own death; that most of the transactions, if not all bear evidence that she had independent advice.

It is assigned as error by complainants that he should have held she was not competent to transact business.

We think the decided weight of the evidence sustains the above findings. We have no doubt she was of

sound mind and capable of attending to her business. She and her husband had been married for many years. He executed his will in the year 1929 and died in 1938 without having changed it. It is an incredible and untenable thesis to assert that a business man of Mr. Black's ability, as reflected by the record, would not know the mental condition of his wife, and, therefore, knowing it to be appreciably impaired he would nevertheless vest in her such discretion as to the use and disposition of his property and nominate her executrix of the estate.

All assignments in this regard are overruled.

The next question is the construction of the will. It appears without dispute that shortly after the death of her husband Mrs. Black deeded the most valuable piece of real estate, a brick garage building to Homer and Roy Black, nephews of her husband. Although the deed recites a valuable consideration, there is no dispute it was actually a gift. Also she surrendered without consideration a $2,500 note to Roy Black and wife which they owed Mr, Black's estate and cancelled the trust deed on his home securing same; she took an unsecured note from them for the same amount and later surrendered it, so that the whole amounted to a gift of so much corpus of the estate.

She also undertook to deed the home place to her two brothers, J. N. Pirtle and George Pirtle, the deed not to take effect until her death.

It also appears that she sold and conveyed three pieces of real estate to the three separate persons heretofore mentioned. Also, she disposed of certain bank stock, bonds, etc., or converted same as to form.

All of these transactions are attacked. The Chancellor set aside the gifts to Homer and Roy Black but

upheld the sales and conveyances of land. He refused to hold any of the three defendant banks liable for honoring checks or securities signed by Mrs. Black, because she was capable of understanding what she was doing; he refused to hold them liable for like transactions on the signature of Homer Black as agent for Mrs. Black because he held powers of attorney.

We think the Chancellor was undoubtedly correct as to the non-liability of the banks and no further discussion is necessary.

The only question of difficulty is whether the will empowered Mrs. Black to give away any part of the corpus of her husband's estate. This question has not been specifically answered by any reported opinion in this State, but there are several cases which we believe will serve as a guide to the solution of the problem.

The will here is in part similar to that in Jones v. McMurrey, 25 Tenn. App. 47, 150 S.W. (2d) 713, 714, in which the words " 'to be used as she see fit' " are substantially the same as "to have and to enjoy in any way she may deem proper". The will in that case became operative before the 1932 Code, Sections 7603 and 8093 and the question was whether the will vested a life estate with an unlimited power of disposition so as to convert it into a fee or was it a life estate with a vested remainder in the gift over? Held, a life estate with a limited or qualified power to dispose of all of the property only if the life tenant might find it necessary for her personal use; that the life estate was not converted into a fee; that the remainder was not vested during the life estate but only became vested in what remained undisposed of by the life tenant at her death; that the determination of the necessity for *sale* of the property during her life

was committed to her discretion and that her exercise of discretion as to the necessity of sale could not be questioned except for fraud. As to this last the Court cited Williams v. Coldwell, 172 Tenn. 214, 111 S.W. (2d) 367, 114 A.L.R. 941, 946, which cites Matthews v. Capshaw, 109 Tenn. 480, 72 S.W. 964, which held that the decision of the donee of the power to sell for necessity is conclusive, in the absence of fraud, and that a sale in good faith would not be set aside even though it later appeared the judgment of the donee was erroneous.

The case of Redman v. Evans, 184 Tenn. 404, 199 S.W. (2d) 115, 118, is not actually in conflict with the above cases but in the final analysis is consistent. The question in that case was whether the phrase " 'to handle as he sees fit during his life time' " was broad enough to permit the life tenant to encroach on the corpus and it was held that it was. The opinion does say that the power of disposition is unlimited, but it ends as follows:

"we think it inescapable that it was the intention of the testatrix that his nephew might encroach upon the corpus *at least to the extent of his needs* and those of this invalid brother and these daughters".

Code Sections 7603 and 8093 do not enter into the determination of whether the power of disposition is limited or unlimited; the purpose of the statute is to change the common law rule, which converted the life estate with unlimited power of disposition into a fee and destroyed the remainder, so as to convert it into a fee absolute as to the right of disposition and rights of creditors and purchasers but to preserve the remainder which the life tenant has not disposed of.

It seems to us that by necessary implication from what is held in the above cited cases and others the life

tenant donee may not give away the corpus of the property, for such would not only not be in accord with the intention of the testator to provide for the life tenant's maintenance and support, but would work a fraudulent deprivation on the remaindermen of the contingent benefits intended by the testator for them.

This has been the ruling in a number of other jurisdictions as shown by the Chancellor, some of which are: Pearson v. Orcutt, 106 Kan. 610, 189 P. 160; Cook v. Higgins, 290 Mo. 402, 235 S.W. 807; Quarton v. Barton, 249 Mich. 474, 229 N.W. 465, 69 A.L.R. 820; Cochran v. Groover, 156 Ga. 323, 118 S.E. 865; Evans v. Leer, 232 Ky. 358, 23 S.W. (2d) 553; United States v. Moore, 197 Ark. 664, 124 S.W. (2d) 807; Vincent v. Putnam, 127 Misc. 647, 217 N.Y.S. 381.

█ Placing ourselves then as nearly as possible in the position of the testator, we find that the primary but not the sole object of his bounty was his wife. He wanted her to be taken care of as long as she lived but he assumed that could likely be done without consumption of all his estate of about $25,000 so that at her then age there would probably be something left at her death; the very fact that he used the words "which may remain" carries the necessary implication that she could sell or dispose of the corpus of the personalty and the power expressly given as to the land was added for certainty in order that she could give an unquestioned record title to land, but not by way of "expressio unis, exclusio alterius" as to personalty.

He next provided small legacies totaling $600 to his relatives, but not including Homer or Roy, then the remainder to his foster daughter and her children of whom he was fond.

There is nothing in the will or in the surrounding circumstances to indicate that he had any intention to make any others the object of his bounty, or that he expected his widow to do so with the corpus of his property and thus cause a course of devolution which he could have made but expressly did not do.

We therefore conclude that he intended for his widow to use any or all of the income and corpus she deemed advisable or necessary for her support and maintenance and that she could manage, sell, trade, convert, or change the form of investment, etc., for that purpose but that he did not empower her to give away the corpus.

We are therefore of opinion the action of the Chancellor was correct in holding void and setting aside all gifts of corpus above mentioned, in so far as the donee's rights are concerned; in reinstating the note and trust deed executed by Roy Black and wife on their property, subject to intervening valid liens, and in rendering judgment against them for $2,500 with interest less credit for any payments on same to be determined on a reference to the Master.

Mrs. Louise McAnulty, however, is an innocent purchaser for value without notice of any defects in the title of Roy Black to the entent of the balance due on the debt of Roy to her; the deed from Mrs. G. A. Black to Homer and Roy purports on its face to be a conveyance for a valuable consideration and was registered and Mrs. Black had the power to so convey; there is no evidence to show that Mrs. McAnulty and her husband, who handled the matter for her, knew of any defects in the title of Roy Black.

The trust deed held by Mrs. McAnulty is therefore a valid lien on the property.

With the title to the garage property being thus encumbered through the action of Roy Black the question arises as to what relief complainants are entitled to against Roy in this regard. The solution of this problem depends upon the principles to be discussed below on the question of the extent of liability, if any, of Roy and Homer for rent on the property.

The Chancellor held Roy Black and his wife, Katherine Black, accountable for rent of the garage property, less credit for taxes, upkeep, etc., from the *date of death* of Mrs. G. A. Black, on the theory that Mrs. Black in any view of the will of her husband had a right to give away the income during her life.

Katherine Black insists this was error as to her and we think it was; she was not a party to either the deed from Mrs. Black to Homer and Roy dated March 3, 1939 or the deed of August 1939 from Homer to Roy of his half interest, for which Roy paid $3,000.

Complainants insist it was error not to render judgment against both the estate of Homer and against Roy for rent from the *date of Mrs. Black's* deed to them.

The solution of these two above stated questions we think is as follows.

The Chancellor found that Homer stood in a confidential relationship with Mrs. Black; that he was her nephew. If that is intended to mean the relationship was confidential because of that kinship alone, we are not prepared to agree; it would place Roy in the same category, yet there is nothing in the record to show that Roy had such status.

It is obvious, however, that Homer had such status, for he was her agent by several express powers-of-attorney, beginning August 22, 1938 to handle her real

estate and by proper inference otherwise from the record he handled most of her business.

The relationship of principal and agent is one of trust and confidence. McNeill v. Dobson-Bainbridge Realty Co., 184 Tenn. 99, 106, 195 S.W. (2d) 626.

We therefore agree with the ultimate finding of the Chancellor that a relationship of trust and confidence existed between Homer and Mrs. Black. Judge Felts has ably stated the governing rules in equity in such a situation and same need not be here repeated. Roberts v. Chase, 25 Tenn. App. 636, 650 et seq., 166 S.W. (2d) 641; Miller v. Proctor, 24 Tenn. App. 439, 145 S.W. (2d) 807.

The Chancellor was familiar with these rules and held that the presumption of invalidity of the deed to Homer and Roy placed on Homer the burden of justifying the transaction but that Roy and the personal representative of Homer had succeeded in doing so as well as could be done under the circumstances of Homer's death.

We are not able to agree with this latter finding. We see nothing in the record that could be called "the clearest and most satisfactory" evidence or any evidence that Mrs. Black had "independent and competent" advice.

There was produced in evidence by Roy a letter in Mrs. Black's handwriting dated in February about ten days before the deed in March, 1939, stating she wanted Homer and Roy to have this building. That letter, however, is subject to the same test or presumption as the deed.

Also, there was the inadmissible testimony of W. K. Foster, to the effect that in 1936 Mr. Black had stated he wanted Homer and Roy to have this garage building, yet he could have devised or deeded it to them but did not do so.

The fact that Homer died and was not present to testify could work no change in the rule requiring evidence to overcome the presumption of invalidity; the rules make no exception of deceased fiduciaries and are not designed for their protection but are for the protection of the cestui que trust.

As said, we do not find that Roy stood in a relationship of confidence with Mrs. Black; he knew nothing about her business except what Homer told him and he never acted for her in any matters except occasionally doing an errand for Homer in connection with her affairs.

The proof is clear, however, that Roy was told by Homer that Mrs. Black was going to make the deed to both of them, that Roy knew of the confidential relationship between Mrs. Black and Homer, that they wanted the property and that Homer acted for himself and Roy in the transaction.

Hence, Roy, as well as Homer, was not only charged with constructive knowledge of the lack of testamentary authority in Mrs. Black to give away the corpus of her husband's property but had actual knowledge of the confidential relationship between Homer and Mrs. Black, which, if abused, would make both Homer and Roy constructive trustees of any property obtained from her by reason of Homer's violation of that confidence. 54 Am. Jur. 167, Sec. 218; 54 Am. Jur. 173, Secs. 225, 226; 54 Am. Jur. 174, Sec. 227. See also, Central Bus Lines v. Hamilton Nat. Bank, 34 Tenn. App. 480, 486, 239 S.W. (2d) 583; Covert v. Nashville, C. & St. L. Ry., 186 Tenn. 142, 152, 208 S.W. (2d) 1098, 1 A.L.R. (2d) 154.

Under the circumstances the burden rests equally upon the estate of Homer and upon Roy to overcome the prima facie presumption of invalidity of the transaction

and, having failed in this regard, neither will be allowed to profit in any manner by reason of the gift.

Therefore, though Mrs. Black had the power to give away the rent, income or use of the garage property for the remainder of her life, her action in doing so under the circumstances must be held invalid.

■ On the question of liability for rental value or rent the majority rule, although there are not many cases on the subject, seems to make a distinction between the liabilty of an express trustee having a duty to make the property produce an income and a constructive trustee on whom it is said rests no such duty. The latter is liable for rent only if he obtains rent or uses the property himself. 54 Am. Jur. 401, Sec. 503; Lawley v. Hickenlooper, 64 Utah 543, 231 P. 821, 36 A.L.R. 1327 et seq.

■ Therefore Roy is liable for the reasonable rental value from the date of the deed from Mrs. Black to the two of them, less proper credits for taxes, upkeep, etc., while the estate of Homer is not liable for any rent.

Roy Black will be required to remove within 90 days from entry of decree herein the lien of Mrs. McAnulty's trust deed, or in lieu thereof to give a sufficient bond with good and solvent surety, either one corporate or three individuals, for the liquidation of the lien debt according to his contract and the removal of said lien; otherwise this cause will be retained in court for the purpose of rendering judgment against him for all loss which may be suffered and expense which may be incurred by complainants by reason of his failure to remove said lien; the same requirement is made of the personal representative of the estate of Homer B. Black and the cause is likewise retained in court for this purpose. 54 Am. Jur. 196, Secs. 253, 254.

A writ of possession will issue upon application of complainants.

By other assignments of complainants it is insisted that the estate of Homer Black should be held accountable for the alleged loss of a bond and cash which disappeared allegedly from Mrs. Black's home after her death; also for various bank transactions handled by Homer as agent; and for the value of 18 shares of stock of the Bank of Bolivar which were transferred from Mrs. Black to Homer Black and his wife, Fannie Hugh.

The Chancellor found no merit in any of these insistences and neither do we except as to the 18 shares of stock. This stock, however, appears to have been transferred for value, but being a transaction between principal and agent by which the agent acquired property from the principal, the burden was on Homer's administrator to overcome the prima facie presumption of invalidity, as above discussed. No effort was made to do so and Mrs. Fannie Hugh Black knew nothing about the transaction. Hence it must be set aside and the estate of Homer held accountable for the stock, or its present value, plus any dividends with interest on dividends from date paid, but without interest on the stock value to date of this decree.

As to the three sales of real estate we think they were fairly made and that she had the power to convert realty into personalty and vice versa. The insistence is made that she could sell only when necesary for her support. We do not think so, but even if such were the case, she was the sole judge of the necessity in the absence of fraud and there is no evidence of fraud on her part.

The Chancellor fixed a lien on the properties recovered to secure the fee for complainants' attorneys. We find no error in this. He adjudged all costs against the estate of G. A. Black including a fee to the Guardian ad Litem for Lois Black Kennedy, daughter of Homer Black. This is assigned as error. We think it was in the discretion of the Chancellor to so tax the costs and his action will not be disturbed, as no abuse of discretion is shown.

A number of motions have been filed by complainants for dismissal of the appeal or the writ of error filed by some of the parties.

We have considered these motions and while we do not approve the practice followed we think in the final analysis there is no ultimate merit in any of the motions that would justify a discussion of them; the same are overruled.

The decree of the Chancellor will be affirmed as modified and a decree will be entered here accordingly with costs of the appeal adjudged against the estate of G. A. Black, and cause is remanded.

Avery and Carney, JJ., concur.