**Caruthers EWING, Executor of the Estate of Bessie W. Ewing, Deceased, Plaintiff,**

**v.**

**J. M. ROUNTREE, District Director of Internal Revenue for the District of Tennessee, Defendant.**

**Civ. A. No. 3015.**

United States District Court
M. D. Tennessee,
Nashville Division.

April 3, 1964.

S. Shepherd Tate, of Martin, Tate & Morrow, Memphis, Tenn., for plaintiff.

Kenneth Harwell, U. S. Atty., Joseph L. Lackey, Jr., Asst. U. S. Atty., Nashville, Tenn., Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith and Herbert S. Kendrick, Dept. of Justice, Washington, D. C., for defendant.

WILLIAM E. MILLER, Chief Judge.

This action is brought by the executor of the estate of Mrs. Bessie W. Ewing (herein referred to as decedent or donee) to recover estate taxes paid under protest. The defendant, District Director of Internal Revenue, determined that the taxable estate of the decedent included stock which had been left in trust by decedent's husband, Caruthers Ewing, Sr., (herein referred to as testator or donor).[1] The power to invade the corpus to the extent provided in the will was considered by the defendant to be a "general power of appointment" within the meaning of 26 U.S.C.A. § 2041 (Internal Revenue Code of 1954).[2]

Decedent's husband was a prominent and highly regarded member of the Tennessee Bar. He wrote his own will, executed it in 1945, and died in 1947. The decedent died in 1958. At the time of his death decedent's husband had a considerable estate, and the Humble Oil and Refining Company stock constituted only part of the testamentary trust fund. The decedent also had a substantial amount of property in her own name, including the house and corporate stock previously given to her by her husband, and other stock which she had inherited from relatives. In 1954 the Humble stock was exchanged for Standard Oil Company (New Jersey) stock under a plan of reorganization. It is the Standard Oil stock that defendant has deemed taxable in decedent's estate. Although the decedent has sold some of her other stock and consumed the proceeds, she never in whole or in part exercised her power under the will to request sale of the Humble stock or the exchanged Standard stock, and the principal in the trust fund was intact at the time of her death.

Plaintiff contends: (1) Under the law of Tennessee the power of appointment created by the will is by implication limited to consumption of principal only for support and maintenance, is thus limited by an "ascertainable standard", and is therefore excepted under 26 U.S.C.A. § 2041(b) (1) (A); (2) Since decedent's husband executed the will and died between 1945 and 1947, the tax law in force at that time must be looked to in order to determine taxability of the power;

---

1. "I give to Hubert K. Reese, as TRUSTEE, all of my estate with direction that the income therefrom be paid to my wife, BESSIE W. EWING, during her life, and I authorize and direct said TRUSTEE to sell annually, should my wife request it, one hundred (100) shares of Humble Oil and Refining Company stock, and pay the proceeds of such sale to my wife. *Should my wife at any time request sale of more stock* of the Humble Oil and Refining Company than I have mentioned, she may to that extent invade the corpus of my estate by having such sale made and the proceeds paid over to her." (Emphasis supplied.)

2. "(a) The value of the gross estate shall include the value of all property * * *—
   "(2) To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive. A disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power. * * *
   "(b) For purposes of subsection (a)—
   "(1) The term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—
   "(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment."

that under the law as it then existed this power would not have been taxable, and therefore to apply the law as it now exists (under the Power of Appointment Act of 1951, 65 Stat. 91) to a power created before 1951 would be a taking of property without due process of law in violation of the Fifth Amendment to the Federal Constitution; and (3) The exchange of the Humble stock for the Standard stock in the reorganization terminated decedent's power of appointment and thus removed it from her estate. This last contention is wholly without merit and can be disposed of summarily. The decedent's right to request the sale of the Humble stock continues over to any stock received in exchange for the Humble stock in a reorganization. It cannot seriously be argued that the trustee would not have been required to honor a request by the decedent to sell the Standard stock and pay over the proceeds to her.

The defendant insists that considering the will from its four corners, the power is general and not limited by any ascertainable standard; that no such limitation is implied by law; and that under the law as it existed both at the time the testator died and at the time of decedent's death, the power was includible in her estate. Even if it were not includible under the 1942 Act, it is argued that application of the 1951 Act is not a constitutionally forbidden taking of property without due process of law.

## LIMITATION OF THE POWER

The plaintiff's contention that the power is limited can be tested by answering two questions: Under the law of Tennessee, if the decedent had wished to dispose of the stock, could the remaindermen have restrained such a sale if it were not reasonably to be used for her support and maintenance? Or, stated

another way, could the decedent have requested sale of the stock and used the proceeds for luxuries totally unconnected with her support and maintenance?

The bare words of the will indicate no restriction on the power. To sustain the theory under which the power would be excluded from taxation, it must be shown that under Tennessee law the words carry the legal implication that the power is limited to an ascertainable standard of care and maintenance. The cases cited by the plaintiff for this proposition have been considered, but neither they nor any authorities found by the Court support plaintiff's position. The Tennessee cases dealing with a life interest and a power to invade the corpus fall generally into two categories: (1) Cases to determine whether under the terms of a particular will the widow had power to invade the corpus to *any* extent,[3] and (2) cases seeking to determine whether the power was unlimited so as to create a fee when joined with a life estate.[4] The cases which fall into this latter category would at first glance appear to support plaintiff's contention, for in some instances the Tennessee Court has implied a limitation on an apparently unlimited power. However, in these cases the Court seems to be going beyond the obvious meaning of the power in order to avoid the logical consequences of the much criticized rule which created a fee from the joining of a life estate with the unlimited power of disposal.[5] Where the named remaindermen and the heirs of the donee of the power were not the same, this rule operated to defeat the intention of the testator that the widow have the use of the property for her life, including the right to spend the principal, but with any of the corpus remaining over to named beneficiaries. With this in mind, cases of this class do not

3. E. g. Downing, Ex'r v. Johnson, 45 Tenn. 229 (1867); Williams v. Coldwell, 172 Tenn. 214, 111 S.W.2d 367, 114 A.L.R. 941 (1937).

4. E. g. Waller v. Sproles, 160 Tenn. 11, 22 S.W.2d 4 (1929); Mauk v. Irwin, 175 Tenn. 443, 135 S.W.2d 922 (1940); Redman v. Evans, 184 Tenn. 404, 199 S.W. 2d 115 (1947).

5. This rule has been changed by statute— TCA § 64–106.

establish in the Court's view a general rule that an otherwise unlimited power can only be exercised to provide support and maintenance.

One Tennessee case does, however, hold that one limitation will be implied on an apparently unlimited power, i. e., that the power of disposal shall not include the right to make gifts of the corpus of the estate. Black v. Pettigrew, 38 Tenn..App. 1, 270 S.W.2d 196 (1953).[6] There the widow of the testator was given an estate for life with power to "sell or dispose of any or all of my realty as she may desire." She gave some of the property to various relatives. The Court of Appeals held that although on its face there appeared to be no limitation on the power, it was clear that the testator had not intended that she should give the property to the relatives and thereby defeat the remainder over to his foster daughter.

That the testator in the instant case may have intended that the decedent should not have the power to give the stock to her friends (as indicated by plaintiff's testimony) is immaterial.[7] Even if the decedent's power were so limited as to exclude the power to make gifts of the corpus, it would still not fall within the category of a power which is limited by an ascertainable standard relating to support and maintenance of the holder of the power.

Plaintiff cites Pittsfield National Bank v. United States of America, 181 F.Supp. 851 (D.Mass.1960) in support of his position. There the testatrix had established a trust with the income to her husband during his lifetime "together with all or such part of the principal of same as he may from time to time request, *he to be the sole judge of his needs.*" The Court determined that the words, "he to be the sole judge of his needs," indicated that it was the intention of the testatrix to permit the donee to invade the corpus only if he *needed* to do so; that under the law of Massachusetts "needs" had a definite, limited meaning of "want of subsistence or necessity," and hence that the power was limited by an ascertainable standard.

However, there are no such words of limitation in the case at hand. Similarly, in Snyder v. United States, 203 F.Supp. 195 (W.D.Ky.1962), the following language was held to create a general power of appointment, not limited by any "ascertainable standard":

"* * * all the rest and residue of my estate, of whatsoever kind and wheresoever situated to my beloved Wife, JESSIE SNYDER, for and during her life with power of disposition over both the principal thereof and the income received therefrom, in such manner as she may see fit." At page 197.

The Court said that the cases relied on by the taxpayer involved wills where the "power to invade principal is not expressly granted but arises only by implication," and in such cases the Kentucky Court has held "that the life tenant may not waste the estate or give it away," but that "the testator's intention,

---

6. In Downing, Ex'r v. Johnson, supra, a dictum indicates that an action for waste might lie against a life tenant who unreasonably invades the corpus of the estate. But there the case was not that of a general power; rather the Court implied the power to sell to provide support and maintenance if the income were inadequate to do so.

7. The testimony of the various witnesses for the plaintiff insofar as it goes to show that the testator intended that this power be limited to provide only support and maintenance of the decedent cannot be considered. Wills are construed primarily by reference to the language used and the testator's intention as therein expressed. American National Bank v. Embry, 181 Tenn. 392, 181 S.W.2d 356 (1944). To do otherwise would be to defeat the policy requiring a degree of formality in the execution and construction of wills. In determining the intention of the testator, he is presumed to have intended the legal consequences of his words. It is only when the language is so ambiguous or uncertain as to defy interpretation in a satisfactory manner that extrinsic evidence of the testator's intent will be admitted. Here there is no such ambiguity.

clearly expressed, prevails over rules of construction."

In this instance the power is vested in the donee without limitation in clear and unequivocal terms, and no reason appears to the Court why an intention so clearly expressed by the testator should not be given full effect. As set forth in the foregoing discussion, it is the Court's view that no Tennessee decision requires a holding that a limitation on such a power arises by implication, with the possible exception of the limitation that the donee would not be free to give the property away. It therefore follows under Tennessee law that the power of appointment is not limited by an ascertainable standard of support and maintenance, and consequently under the 1951 Act would be includible in her gross estate.

## CONSTITUTIONALITY OF THE TAX

Plaintiff contends that the stock would not be includible in the estate of the donee under the applicable tax statute in force at the time the power was created.[3] Therefore, plaintiff argues, to apply the law as it now exists under the 1951 Act would violate the Fifth Amendment by taking property without due process of law. Defendant says that the law then in force (1945–47), as well as the present law, permits taxation of the power in decedent's estate.

In support of the position that it would not have been includible prior to 1951, plaintiff cites Schwab v. Allen, 78 F.Supp. 234 (M.D.Ga.1948). There the testatrix executed her will in 1940 and died in November 1942, after the effective date of the act taxing unexercised general powers of appointment. Her will permitted her husband "to encroach upon the prin-

cipal or corpus to such extent as in his sole judgment is necessary or desirable from the standpoint of his welfare." The Court held that "the power of encroachment given Otto Schwab under the will of his wife is expressly within the exception enumerated in subsection (A) of Section 811(f) (2) of the Internal Revenue Code [1939], 26 U.S.C." and thus was not taxable in his estate.

Defendant argues that the power given the decedent would not be excepted under this pre-1951 section of the Code, and the stock would be includible under either of the two statutes. Snyder v. United States, 203 F.Supp. 195 (W.D.Ky. 1962) would at first glance appear to support defendant's position and to be in conflict with the Schwab case. However, the two cases can be reconciled. In Snyder the donee was given the power of disposal of the corpus "in such manner as she may see fit." The Court concluded that the testator intended that his wife, the donee, have "even the power to give the property away if she chose." Thus the Court held that the tax, as applied under the facts, was constitutional.

"Nor is this a case where a testator's reasonable expectations were disappointed by a change in the law after his death, since it appears that the same result would have been reached under the law in effect at [the testator's] death because of [the donee's] power to appoint to persons outside the categories specified in Section 811(f) of the 1939 Internal Revenue Code, 53 Stat. 122, as amended * * *." (At page 201.)

In the Schwab case the donee could not give the corpus away; indeed, he could only use it for his "needs", and in effect could only appoint to himself.

3. 26 U.S.C.A. § 811, IRC 1939, as amended:
   "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal * * *
   "(f) (1) To the extent of any property (A) with respect to which the decedent has at the time of his death a power of appointment, * * *.

   "(2) For the purposes of this subsection the term 'power of appointment' means any power to appoint exercisable by the decedent either alone or in conjunction with any person, except (A) a power to appoint within a class which does not include any others than the spouse of the decedent, *spouse of the creator of the power*, * * *." (Emphasis supplied).

In Tennessee it appears that the "life tenant donee may not give away the corpus of the property." Black v. Pettigrew, 38 Tenn.App. 1, 270 S.W.2d 196 (1953). It might be conceded that, as a matter of state law, the donee in the instant case could only appoint to herself. While this restriction alone is not sufficient to constitute a "limited" (and non-includible) power under the 1951 Act, it does make this "a power to appoint within a class which does not include any others than the * * * spouse of the creator of the power," and therefore, in the Court's view, the stock is excepted from inclusion under the 1942 Act. Thus, at the time the testator executed his will and until passage of the 1951 Act the power would not have been includible in the donee's estate. Does inclusion of the stock in her estate under the 1951 Act result in retroactive and constitutionally impermissible taxation?

The defendant argues that although in the sense of "vesting of estates" the property passed from the donor's estate to the remaindermen and was not "property belonging to the donee," nevertheless, in levying taxes Congress may look through form to substance, and in substance the event taxed is the passage of exclusive control of the stock from the decedent to the remaindermen upon her death in 1958, seven years after enactment of the taxing statute.[9] Thus it is contended that there is no retroactive taxation here involved. See 16A C.J.S.

Constitutional Law § 419c, page 123; and In re Chauncey's Estate, 102 Misc. 378, 168 N.Y.S. 1019, 1024 (1918).

The plaintiff argues that imposition of the tax is retroactive in the sense that it alters the effect of the donor's prior action. At the time the donor executed his will, Congress specifically excluded from taxation a general power of appointment given to the spouse of the donor. If the donor had been writing his will under the present law, it can be presumed that he might have provided differently—he could have limited the power to "an ascertainable standard" thereby retaining the power's non-taxable feature, or he could have completely eliminated the power. An argument can be advanced that to upset carefully planned estates is not sound policy, and that estate planners should have the benefit of a degree of certainty, especially where Congress has explicitly spoken on a particular subject.

■■ That the tax is in some measure or degree retroactive, however, does not alone render it unconstitutional. The Fifth Amendment requires only that the tax shall not be arbitrary or capricious. Brushaber v. Union Pacific Railroad, 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493 (1916); Tyler v. United States, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991 (1930); Gwinn v. Commissioner, 287 U.S. 224, 53 S.Ct. 157, 77 L.Ed. 270 (1932); Wilgard Realty Company v. Commissioner, 127 F.2d 514 (2d Cir. 1942).

---

9. The situation is different from that presented in Barritt v. Tomlinson, 129 F. Supp. 642 (S.D.Fla.1955). There *both* the donor and the donee had died prior to 1951, in 1944 and 1949 respectively. Thus the Florida District Court would not permit taxation of a similar power and held that to apply the 1951 Act would be arbitrary, retroactive taxation, and therefore unconstitutional, since neither the donor nor the donee were able to anticipate or provided for a change in the law and avoid the tax consequences. The testator had left all his property to his wife for her life with "the right to use all or any part of the principal as she might see fit." The Court construed this as being a power limited by an ascertainable standard of support and maintenance, rather than a general power. Insofar as this case holds that such a power of appointment is by law impliedly limited to support and maintenance it is irreconcilable with the result reached here. The Court in that case cited, among others, a Tennessee case, Downing, Ex'r v. Johnson, supra, for the general proposition that such powers are limited. Such is in the Court's opinion an erroneous view of the principle established by that case. However, the Court there was interpreting Florida law, and in any event the ultimate result is justifiable on the alternative constitutional ground.

It is not necessary that the Court determine whether absent a provision for avoidance of the tax it would be unconstitutional, because the 1951 Act would appear to provide the donee a reasonable and effective means of avoiding its retroactive effect.

■ Although the Act of 1951 [Section 2041(a) (2)] included as taxable powers which had been released, it also provided that

"A disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power."

This provision permits the donee of a general power of appointment to execute a disclaimer or renunciation of the power and avoid the estate tax without having the disclaimer or renunciation construed as a release and thereby taxed as a transfer under other sections of the Internal Revenue Code.

The plaintiff notes this provision and attempts to avoid its effect by saying that the Federal Estate Tax Regulations, Section 20.2041-3(d) (6), require that in order to be effective a disclaimer or renunciation must be made within a reasonable time after the donee becomes aware of its existence, or else it will be deemed to have been accepted; and further, that once accepted it cannot later be disclaimed.[10] It is then argued that decedent first learned of the power in 1947, that she had not disclaimed it by 1951, that the passage of four years is more than a reasonable time, and that

by 1951 she would be deemed to have accepted the power and would not thereafter be able to disclaim it. This argument is ingenious, but upon examination proves to be without substance.

■ There is no serious doubt that the donee of a power can renounce it under the law of Tennessee. See In re Hodge's Estate, 20 Tenn.App. 411, 99 S.W.2d 561 (1936); McQuiddy Printing Co. v. Hirsig, 23 Tenn.App. 434, 134 S.W.2d 197 (1939). See generally, Annotation 93 A.L.R.2d 8, et seq. Renunciation is the legal act by which a person gratuitously abandons a right acquired, but without transferring it to another. It is not a release for valuable consideration. 76 C.J.S. page 1169.

If the renunciation required a relinquishment of the donee's right to the income then it could hardly be said that a reasonable method was provided for avoiding the tax. However, renunciation of a power does not entail such a sweeping abandonment of rights.

"A disclaimer is a complete and unqualified refusal to accept the rights to which one is entitled. * * * Such rights refer to the incidents of the power and not to other interests of the decedent in the property." Sec. 20.2041-3(d) (6), Code of Federal Regulations, Title 26. (Note 10, supra.)

It is likewise important to determine whether the donee could have renounced the power at the time of the passage of the 1951 Act and within a reasonable

---

10. "A disclaimer or renunciation of a general power of appointment is not considered to be a release of the power. The disclaimer or renunciation must be unequivocal and effective under local law. A disclaimer is a complete and unqualified refusal to accept the rights to which one is entitled. There can be no disclaimer or renunciation of a power after its acceptance. In any case where a power is purported to be disclaimed or renounced as to only a portion of the property subject to the power, the determination as to whether or not there has been a complete and unqualified refusal to accept the rights to which one is entitled will depend on all the facts and circumstances of the particular case, taking into account the recognition and effectiveness of such a disclaimer under local law. Such rights refer to the incidents of the power and not to other interests of the decedent in the property. If effective under local law, the power may be disclaimed or renounced without disclaiming or renouncing such other interests. In the absence of facts to the contrary, the failure to renounce or disclaim within a reasonable time after learning of its existence will be presumed to constitute an acceptance of the power." Code of Federal Regulations (1961), Title 26, Section 20.-2041-3(d) (6).

time thereafter, for if she could not have renounced at that time, the conclusion would also follow that the Act failed to provide an effective means for her to avoid the tax.

> "Whether or not a renunciation or disclaimer is sufficient is a question of fact, and in order to be effective, it must be express, clear, and unequivocal, and must be evidenced by some positive act or statement made with knowledge of the existence of the will, so as to prevent all future cavil and operate as a quasi estoppel. * * *" 96 C.J.S. Wills § 1151b.

If the donee had clearly accepted the power by a manifest act prior to 1951 and could not thereafter renounce, then, as applied to her, it might be said that the tax is arbitrary. There being no evidence of such acts of acceptance, plaintiff relies on an implied acceptance through mere acquiescence for four years.

The rule is that "[t]he donee of a power may renounce it, but the renunciation must be made within a reasonable time." 96 C.J.S. Wills § 1071. The tax regulations specify that the reasonable time begins to run when the donee learns of the existence of the power. There is no evidence bearing on the state of the donee's knowledge concerning the existence of the power, although it can be presumed that she was cognizant of her right to withdraw funds. However, what constitutes a reasonable time is a question of fact to be determined from all the circumstances. "[A] lapse of time before renouncing is not controlling." 96 C.J.S. Wills § 1151b. It does not appear that the donee at any time prior to 1951 took any positive steps or action amounting to an acceptance of the power. At no time did she request sale of the stock. Her only exercise of dominion was in 1954 when she consented to exchange of the Humble stock for Standard stock. From these facts and under the circumstances disclosed by the record, it is concluded that the donee had not accepted the power at the time the Act was passed in 1951, and was neither then nor for a reasonable time thereafter precluded from renouncing and disclaiming her right to invade the corpus and thereby avoiding the inclusion of the stock in her gross estate.

It might be said that to require the decedent to elect to disclaim the power or risk an estate tax being levied on the stock twice within the same generation is in itself an unconscionable choice and hence arbitrary. In truth it is a more narrow choice than the donor would have had to make if he had executed his will under the present law. As it now stands, a donor can limit a power of disposition to an "ascertainable standard" and thereby protect the donee in a manner in which the donee would not be protected after disclaiming all control. However, Congress is not precluded from expanding the Government's taxing power solely because the expectations or anticipations of a deceased taxpayer may be frustrated as a result.

■ Here the donee could have put herself in the position of the donor and have decided whether it was wiser or more desirable to keep the power so that she might insure satisfaction of her needs and provide for her comforts and support, or whether it was better to disclaim the power while retaining the income, thereby avoiding its being taxed again upon her death. That she may thereby have been put to a hard choice does not render imposition of the tax unconstitutional. Tax statutes many times do not permit even a hard choice in avoiding taxation. Here at least she had viable alternatives, preventing the inclusion of the power in the estate of the decedent from being an arbitrary and capricious exercise of the taxing power.

In the Court's opinion the Standard Oil stock was properly included in the decedent's gross estate.

Judgment consistent with this memorandum will be entered.