Robert D. SHEEHAN, Executor of the
Estate of Gertrude E. Sheehan,
Deceased, Appellant,

v.

OKLAHOMA TAX COMMISSION, State
of Oklahoma, and Clarence L. Deweese,
Chairman, Appellee.

No. 49878.

Supreme Court of Oklahoma.

June 7, 1977.

Downey & Boyd, Tulsa, for appellant.

Donald B. Nevard, General Counsel, Oklahoma Tax Commission, Oklahoma City, for appellee.

LAVENDER, Vice Chief Justice:

John B. Sheehan and Gertrude E. Sheehan, husband and wife, executed reciprocal wills in 1951. On death of either one, the survivor received a life estate and power of disposal with the remainder unto the children. He died in 1954. As the survivor, she was distributed under the final decree of his estate a life estate and the power of disposal with the remainderman interest distributed equally to his children.[1] She

1. Final decree, dated March 10, 1954, in husband's estate provides in part:

"IT IS FURTHER ORDERED, ADJUDGED, AND DECREED BY THE COURT In accord- ance with the terms of said Will that all the rest, residue and remainder of said estate . . (property, the assessment of which is contested in this appeal) be and the same is hereby dis-

(decedent) died some ten years later in 1964. Oklahoma Tax Commission's (Commission) order assessing tax included additional property (principally corporate stock) coming to the decedent through her husband's estate with the power of disposal. The additional tax of some $21,000 was paid under protest by the executor of decedent's estate, Robert D. Sheehan (taxpayer). Taxpayer brought suit to recover that estate tax paid under protest. Trial court entered judgment for Commission. Taxpayer appeals.

The sole issue is the constitutionality of 68 O.S.1971, § 807(A)(9) [2] as applied to this particular assessment of estate tax. Taxpayer argues the effect of that subsection, first passed in 1961, is to allow a retrospective tax on the power of appointment. This tax was not in effect at the time the power was created through the death of the husband in 1954.

Here, there is no fact dispute. Taxpayer agrees the decedent wife died holding a "general power of appointment." That power was possessed by her at time of death. It was exercisable by her in her favor during her lifetime. At the time of her death, she had not exercised the power.

■ Taxpayer's brief agrees that because a tax is in some measure or degree retroactive, that alone *does not* render the tax unconstitutional,[3] unless it is also arbitrary and capricious. Taxpayer draws a parallel with the federal estate and gift tax stat-

utes. He charges the state statute took the definition of a "general power" from the federal act, but failed to include additional provisions allowing the tax on the power to be avoided by a disclaimer or renunciation of a pre-taxed power within a provided for time. Section 807(A)(9) became effective June 15, 1961. That was the same effective date of § 901(c), a gift tax provision.[4] Under that section, an effective release of a general "power of appointment" is considered a transfer of the property affected by the power, with a transfer subject to gift tax if made for less than adequate or full consideration, unless the transfer was a bona fide sale made in the ordinary course of business. Taxpayer contends possession of the power here after June 15, 1961, made it subject to estate tax by § 807(A)(9) or gift tax by § 901(c). Because the tax was not avoidable, it was arbitrary and capricious.

We do not agree. There were viable alternatives available to this decedent. From 1954, when the power was created through her husband's death, until June 15, 1961, the effective dates of §§ 807(A) or 901(c), her power was not subject to either estate or gift tax. If she died possessed of the power prior to that date, there was no tax consequence to her estate. Her disclaiming or renouncing the power prior to that date created no gift tax liability. After June 15, 1961, her dying possessed with the power made the property affected by the power includable in her estate and sub-

---

tributed to Gertrude E. Sheehan, for her natural life, with authority and power to sell, pledge, mortgage, lease or liquidate such portion of said property as she may deem necessary." (Explanation added.) * * *

2. 68 O.S.1971, § 807 provides in part:

"(A) The value of the gross estate, used as a basis for a determination of the value of the net estate, shall be determined by including:

    *    *    *    *    *    *

(9) To the extent of the value of any interest in property within the jurisdiction of this State, over which the decedent at the time of his death had possessed a 'general power of appointment.' A 'general power of appointment' as used herein is restricted to one which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate."

3. See *Brushaber v. Union Pacific Railroad,* 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493 (1916).

4. 68 O.S.1971 § 901—Tax on transfer by gift provides in part:

"(c) The tax shall apply where property is transferred for less than an adequate and full consideration in money or money's worth. However, a sale, exchange or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth, and will not be subject to the tax. The effective release of a general 'power of appointment' shall be considered a transfer of the property to which such general 'power of appointment' applied."

ject to estate tax. After June 15, 1961, her disclaiming or renouncing the power made that act a transfer of the property affected by the power subject to gift tax, provided there was not adequate consideration for that release through a disclaimer or renunciation. But, she had two other alternatives. She could exercise the power and dispose of the property. She could release the power for adequate and full consideration. Exercising either of these two additional alternatives would have avoided tax liability from an estate standpoint under § 807(A) or from a gift standpoint under § 901(c). That the decedent may thereby have been put to a hard choice does not render imposition of the tax unconstitutional.[5]

Here, the decedent had from June 15, 1961, to her death in 1964 to make the hard choice. She chose not to exercise the power. She chose not to release the power, either with or without adequate consideration, or through disclaimer or renunciation. She chose to die possessed with the power. Possessing the power at death is the event taxed by § 807(A). That occurred some three years prospective and subsequent to the effective date of § 807(A).

■ We do not say there is no retroactive effect here. The creator of the power had died. He had no reason to believe that if the power was retained after June 15, 1961, it *could* be subject to estate or gift tax. Yet, there was available to the donee of the power a choice of action which would avoid a retroactive effect of tax liability. The assessment of additional tax under § 807(A) was not arbitrary and capricious.

Affirmed.

ALL OF THE JUSTICES CONCUR.

---

5. *Ewing v. Rountree,* M.D.Tenn., 228 F.Supp. 137, 144 (1965)

"* * * That she (donee of the power) may thereby have been put to a hard choice does not render imposition of the tax unconstitutional. Tax statutes many times do not permit even a hard choice in avoiding taxation. Here at least she (donee) had viable alternatives, preventing the inclusion of the power in the estate of the decedent from being an arbitrary and capricious exercise of the taxing power." (Explanation added.)